**23-2057**

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

◆◆◆

CHRISTEL JOHNSON,

*Plaintiff-Appellant,*

—v.—

NAVY FEDERAL CREDIT UNION,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

## APPENDIX

EDWARD L. ISLER
MICAH E. TICATCH
ISLERDARE PC
Tysons Corner
1945 Old Gallows Road
Suite 650
Vienna, Virginia 22182
(703) 748-2690

*Attorneys for Defendant-Appellee*

THOMAS F. HENNESSY
THE HENNESSY LAW FIRM, PLLC
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
(703) 865-8836

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

PAGE

District Court Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA1

Complaint, dated June 20, 2023 [Dkt. No. 1-1] . . . . . . . . . . . . . . . . . . . . . . . . JA5

Defendant Navy Federal Credit Union's Motion to Dismiss,
    dated June 27, 2023 [Dkt. No. 7] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA16

Memorandum in Support of Defendant's Motion to Dismiss,
    dated June 27, 2023 [Dkt. No. 8] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA18

First Amended Complaint, dated July 11, 2023 [Dkt. No. 11] . . . . . . . . . . JA32

Defendant Navy Federal Credit Union's Motion to Dismiss First
    Amended Complaint, dated July 25, 2023 [Dkt. No. 13] . . . . . . . . . . . JA45

Memorandum in Support of Defendant's Motion to Dismiss First
    Amended Complaint, dated July 25, 2023 [Dkt. No. 14] . . . . . . . . . . . JA47

Plaintiff's Response to Defendants' Motion to Dismiss,
    dated August 8, 2008 [Dkt. No. 18] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA62

Defendant's Reply Brief in Further Support of Its Motion to Dismiss
    First Amended Complaint, dated August 14, 2023 [19] . . . . . . . . . . . . JA77

Notice of Filing Hearing Transcript, dated January 18, 2024
    [Dkt. No. 28] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . JA86

Order of the Honorable Michael S. Nachmanoff,
    dated September 6, 2023 [Dkt. No. 21] . . . . . . . . . . . . . . . . . . . . . . . . . JA102

Plaintiff's Notice of Appeal, dated October 6, 2023 [Dkt. No. 23] . . . . . JA103

# JA1

**Query    Reports    Utilities    Help    Log Out**

APPEAL,CLOSED,JURY

**U.S. District Court**
**Eastern District of Virginia - (Alexandria)**
**CIVIL DOCKET FOR CASE #: 1:23-cv-00794-MSN-JFA**

| | |
|---|---|
| Johnson v. Navy Federal Credit Union | Date Filed: 06/20/2023 |
| Assigned to: District Judge Michael S Nachmanoff | Date Terminated: 09/06/2023 |
| Referred to: Magistrate Judge John F. Anderson | Jury Demand: Plaintiff |
| related Case: 1:20-cv-01440-LO-IDD | Nature of Suit: 442 Civil Rights: Jobs |
| Case in other court: 4th Circuit, 23-02057 | Jurisdiction: Federal Question |
| Circuit Court of Fairfax County, CL-22-07427 | |
| Cause: 42:1981 Job Discrimination (Race) | |

**Plaintiff**

**Christel Johnson**                  represented by   **Thomas F. Hennessy**
                                                        4015 Chain Bridge Road
                                                        Suite G
                                                        Fairfax, VA 22030
                                                        Email: thennessy@virginiawage.net
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Thomas Francis Hennessy**
                                                        Thomas F. Hennessy
                                                        4015 Chain Bridge Rd
                                                        Suite G
                                                        Fairfax, VA 22030
                                                        703-865-8836
                                                        Fax: 703-865-7633
                                                        Email: thennessy@virginiawage.net
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Navy Federal Credit Union**         represented by   **Edward Lee Isler**
                                                        Isler Dare PC (Vienna, VA)
                                                        1945 Old Gallows Road
                                                        Suite 650
                                                        Vienna, VA 22182
                                                        (703) 748-2690
                                                        Fax: (703) 748-2695
                                                        Email: eisler@islerdare.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Micah Ephram Ticatch**
                                                        Isler Dare PC (Vienna, VA)
                                                        1945 Old Gallows Road
                                                        Suite 650

Vienna, VA 22182
703-748-2690
Fax: 703-748-2695
Email: mticatch@islerdare.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/20/2023 | 1 | Notice of Removal ( Filing fee $ 402, receipt number AVAEDC-8988423.), filed by Navy Federal Credit Union. (Attachments: # 1 Exhibit 1 (Complaint), # 2 Exhibit 2 (Notice), # 3 Exhibit 3 (Notice), # 4 Civil Cover Sheet)(Ticatch, Micah) (Entered: 06/20/2023) |
| 06/20/2023 | 2 | Corporate Disclosure Statement by Navy Federal Credit Union. (Ticatch, Micah) (Entered: 06/20/2023) |
| 06/20/2023 |   | Initial Case Assignment to District Judge Michael S Nachmanoff and Magistrate Judge John F. Anderson. (show) (Entered: 06/23/2023) |
| 06/21/2023 | 3 | NOTICE of Appearance by Edward Lee Isler on behalf of Navy Federal Credit Union (Isler, Edward) (Entered: 06/21/2023) |
| 06/23/2023 | 4 | MOTION for Attorney Fees by Navy Federal Credit Union. (Attachments: # 1 Proposed Order)(Isler, Edward) (Entered: 06/23/2023) |
| 06/23/2023 | 5 | Memorandum in Support re 4 MOTION for Attorney Fees filed by Navy Federal Credit Union. (Attachments: # 1 Exhibit 1 (Isler Declaration))(Isler, Edward) (Entered: 06/23/2023) |
| 06/23/2023 | 6 | Notice of Hearing Date set for July 28, 2023 re 4 MOTION for Attorney Fees (Isler, Edward) (Entered: 06/23/2023) |
| 06/26/2023 |   | Set Deadline as to 4 MOTION for Attorney Fees. Motion Hearing set for 7/28/2023 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. (wgar, ) (Entered: 06/26/2023) |
| 06/27/2023 | 7 | MOTION to Dismiss for Failure to State a Claim by Navy Federal Credit Union. (Attachments: # 1 Proposed Order)(Isler, Edward) (Entered: 06/27/2023) |
| 06/27/2023 | 8 | Memorandum in Support re 7 MOTION to Dismiss for Failure to State a Claim filed by Navy Federal Credit Union. (Isler, Edward) (Entered: 06/27/2023) |
| 06/27/2023 | 9 | Notice of Hearing Date set for July 28 re 7 MOTION to Dismiss for Failure to State a Claim (Isler, Edward) (Entered: 06/27/2023) |
| 06/28/2023 |   | Set Deadlines as to 7 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 7/28/2023 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. (wgar, ) (Entered: 06/28/2023) |
| 07/06/2023 | 10 | Withdrawal of Motion by Navy Federal Credit Union re 4 MOTION for Attorney Fees (Ticatch, Micah) (Entered: 07/06/2023) |
| 07/11/2023 | 11 | AMENDED COMPLAINT against Navy Federal Credit Union, filed by Christel Johnson. (Hennessy, Thomas) (Entered: 07/11/2023) |
| 07/11/2023 | 12 | Memorandum in Opposition re 7 MOTION to Dismiss for Failure to State a Claim filed by Christel Johnson. (Hennessy, Thomas) (Entered: 07/11/2023) |
| 07/18/2023 |   | Motion Hearing set for 07/28/2023 at 10:00 AM TERMINATED per MSN Chambers. (lcre, ) (Entered: 07/18/2023) |

| | | |
|---|---|---|
| 07/25/2023 | 13 | MOTION to Dismiss for Failure to State a Claim by Navy Federal Credit Union. (Attachments: # 1 Proposed Order)(Isler, Edward) (Entered: 07/25/2023) |
| 07/25/2023 | 14 | Memorandum in Support re 13 MOTION to Dismiss for Failure to State a Claim filed by Navy Federal Credit Union. (Isler, Edward) (Entered: 07/25/2023) |
| 07/25/2023 | 15 | Notice of Hearing Date set for August 18, 2023 re 13 MOTION to Dismiss for Failure to State a Claim (Isler, Edward) (Entered: 07/25/2023) |
| 07/26/2023 | | Set Deadline as to 13 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 8/18/2023 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. (wgar, ) (Entered: 07/26/2023) |
| 07/27/2023 | | *** Motion Hearing deadline set for 7/28/2023 terminated Per MSN's chambers (tarm) (Entered: 07/27/2023) |
| 08/02/2023 | 16 | Notice of Hearing Date *(Amended)* set for 8/25/2023 re 13 MOTION to Dismiss for Failure to State a Claim (Isler, Edward) (Entered: 08/02/2023) |
| 08/03/2023 | | Notice of Correction: The filing user is directed to **re-notice** the motion hearing as the Court is unavailable on 08/25/2023 in re 16 Notice of Hearing Date. (PER MSN CHAMBERS) (wgar, ) (Entered: 08/03/2023) |
| 08/07/2023 | 17 | Notice of Hearing Date *(Second Amended)* set for 9.01.2023 re 13 MOTION to Dismiss for Failure to State a Claim. (Isler, Edward) (Entered: 08/07/2023) |
| 08/08/2023 | | Set Deadline as to 13 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 9/1/2023 at 10:00 AM in Alexandria Courtroom 600 before District Judge Michael S Nachmanoff. (wgar, ) (Entered: 08/08/2023) |
| 08/08/2023 | 18 | Memorandum in Opposition re 13 MOTION to Dismiss for Failure to State a Claim filed by Christel Johnson. (Hennessy, Thomas) (Entered: 08/08/2023) |
| 08/14/2023 | 19 | REPLY to Response to Motion re 13 MOTION to Dismiss for Failure to State a Claim filed by Navy Federal Credit Union. (Isler, Edward) (Entered: 08/14/2023) |
| 09/01/2023 | 20 | Minute Entry for proceedings held before District Judge Michael S Nachmanoff: Motion Hearing held on 9/1/2023. Appearances of counsel. MOTION to Dismiss for Failure to State a Claim re 13 argued and GRANTED. Amended complaint dismissed with prejudice. Order to follow. (Court Reporter D. Salters.)(lcre, ) (Entered: 09/01/2023) |
| 09/06/2023 | 21 | ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 13) is GRANTED; and it is further ORDERED that the Amended Complaint (Dkt. 11) is DISMISSED WITH PREJUDICE; and it is further ORDERED that judgment be entered in favor of Defendant. Signed by District Judge Michael S Nachmanoff on 9/6/2023. (nneb) (Entered: 09/06/2023) |
| 09/06/2023 | 22 | Clerk's Judgment is hereby entered in accordance with Rule 58 of the Federal Rules of Civil Procedure in favor of Defendant, Navy Federal Credit Union and against the Plaintiff, Christel Johnson. Entered by Clerk on 9/6/2023. (nneb) (Entered: 09/06/2023) |
| 10/06/2023 | 23 | NOTICE OF APPEAL as to (21 in 1:23-cv-00794-MSN-JFA) Order on Motion to Dismiss for Failure to State a Claim, (22 in 1:23-cv-00794-MSN-JFA) Clerk's Judgment by Christel Johnson. Filing fee $ 505, receipt number VAEDC-9161078. (Hennessy, Thomas) (Entered: 10/06/2023) |
| 10/06/2023 | 24 | Transmission of Notice of Appeal to US Court of Appeals re 23 Notice of Appeal. (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov). (jlan) (Entered: 10/06/2023) |

# JA4

| 10/11/2023 | 25 | USCA Case Number 23-2057, case manager T. Fischer 4th Circuit for 23 Notice of Appeal, filed by Christel Johnson. (swil) (Entered: 10/11/2023) |
|---|---|---|
| 11/15/2023 | 26 | TRANSCRIPT of motion hearing for date of 9-1-23, before Judge Michael Nachmanoff, re 23 Notice of Appeal, Court Reporter Diane Salters, Telephone number 301-338-8033. **NOTICE RE REDACTION OF TRANCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** *Does this satisfy all appellate orders for this reporter? y* **Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/15/2023. Redacted Transcript Deadline set for 1/16/2024. Release of Transcript Restriction set for 2/13/2024.(Salters, Diane) (Entered: 11/15/2023)** |
| 11/15/2023 | 27 | Transcript Order Acknowledgment from USCA re 23 Notice of Appeal: Court Reporter/Transcriber Diane Salters. (swil) (Entered: 11/15/2023) |
| 01/18/2024 | 28 | NOTICE by Christel Johnson re 23 Notice of Appeal, 24 Transmission of Notice of Appeal to 4CCA (Attachments: # 1 Exhibit hearing transcript)(Hennessy, Thomas) (Entered: 01/18/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/18/2024 15:37:28 | | |
| **PACER Login:** | teamrpacc | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00794-MSN-JFA |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

·· FILED
CIVIL INTAKE

**VIRGINIA:**

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

2022 JUN -6 PM 3: 50

| | |
|---|---|
| **CHRISTEL JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) Case No.: **2022** <sup>th</sup> **_ 7 4 2 7** |
| | ) |
| **NAVY FEDERAL CREDIT UNION,** | ) |
| | ) |
| **Defendant.** | ) |

CLERK, CIRCUIT COURT
FAIRFAX, VA

### COMPLAINT

Comes now Plaintiff Christel Johnson (hereinafter "Plaintiff Johnson" or "Plaintiff"), by and through counsel, hereby files this Complaint against Defendant Navy Federal Credit Union ("NFCU"). Plaintiff Johnson seeks relief pursuant to Section 1981 of the Civil Rights Act of 1866, and 42 U.S.C. § 1981.

### PARTIES

1. Plaintiff Christel Johnson is a resident and citizen of the Commonwealth of Virginia

2. Defendant NFCU is a Virginia corporation in good standing and maintains an agent for service of process in the Commonwealth of Virginia. NFCU conducts banking services and is headquartered in Vienna, Virginia.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Complaint because state courts enjoy concurrent jurisdiction over section 1981 causes.

4. Venue is proper in this court in that all or some events or omissions giving rise to Plaintiff's claims occurred in Fairfax County.

### FACTS

5. Plaintiff Johnson is an African American female and was formerly employed as a Software

1

Quality Assurance Test Specialist. She had been employed by NFCU since August 1997. She has over twenty years of experience in banking, ten of which have been focused on Software Quality Assurance and ensuring customer-facing applications are beneficial to NFCU's operations. Ms. Johnson holds certifications as a Tester Foundation Level(CTFL), Scrum Master, and ITIL, which enhance her software testing capabilities. As part of her job at NFCU, Plaintiff writes, modifies, and tests scripts for software applications related to NFCU's banking operations, communicates the test results to the implementation and development teams, and maintains and updates test databases and documentation. Ms. Johnson's performance at NFCU earned her several performance awards, such as the Sustained Superior Performance Award.

6.      Plaintiff had filed a previous EEOC complaint against NFCU in 2010. After she filed an EEOC complaint, she faced other discrimination and a hostile work environment. The Management team, including Nina Crawford, Assistant Manager, and Timothy Solem (Caucasian male), Manager, as well as several other employees subjected Plaintiff to inappropriate behavior during meetings, and in plain sight of vendors, the Senior Vice President of NFCU, Gale Lewis, and other people from different sections of NFCU. Around December 2015, Plaintiff had unused leave time, but Ms. Crawford denied Plaintiff from using that leave and forced Plaintiff to "donate" that leave time to NFCU's leave bank. Ms. Crawford asked only Plaintiff to do so. This was irregular and there was no legitimate reason to do so. Ms. Crawford did not ask anyone else to use their time, and as a result Plaintiff was singled out. Ms. Hirsch's hostile activities towards Plaintiff

7.      Ms. Michelle Hirsch (Caucasian female), a Credit Card Systems specialist, was initially designated as Plaintiff's mentor by Ms. Crawford sometime around January 2015 and Plaintiff was instructed to consult Ms. Hirsch for guidance. Even though Ms. Hirsch was continuously rude, uncooperative, and not fulfilling all of her duties, she was promoted despite the Human Resources Department's knowledge of her hostile activities towards Plaintiff. On several occasions, Ms. Hirsh

2

provided Plaintiff wrong instructions regarding her work duties in an effort to set up Plaintiff for failure. This made Plaintiff suspicious of Ms. Hirsch's instructions, and Plaintiff did her due diligence by requesting information from other sources in order to perform her tasks successfully.

8.      Ms. Hirsch provided Plaintiff with unreliable information for work-related tasks. On one occasion, Ms. Hirsch gave Plaintiff inaccurate product codes and as a result, Plaintiff resorted to asking the external vendor for the information in order to prevent a workplace mishap. This indicated to Plaintiff that she cannot rely on Ms. Hirsch and that she would have to seek out accurate information from vendors when she felt she needed more accurate information.

9.      On one occasion in 2016, Ms. Hirsch scheduled a meeting with Plaintiff and when Plaintiff approached Ms. Hirsch's desk to start preparing the meetings, Ms. Hirsch raised her hand to Plaintiff's face and told Plaintiff to "talk to the hand" in front of other section employees and Plaintiff's colleagues. This made Plaintiff feel disrespected and that Ms. Hirsch and NFCU were making Plaintiff a laughing matter. Ms. Hirsch did not treat anyone else like this, and only Plaintiff faced this treatment.

10.     On or about June 6, 2018, Michelle Hirsch made an outburst that disrupted the work of others. Plaintiff was engaged in a conversation with Mr. Solem, and he pulled Ms. Hirsch into the conversation. When Ms. Hirsch engaged Plaintiff, she launched into a loud outburst and addressed Plaintiff in an offensive and racist matter by stating "don't roll your neck at me" as if Plaintiff was being aggressive. Plaintiff was not rolling her neck and felt that this was an offensive and racist comment as it feeds into stereotypes of African American women being aggressive. Mr. Solem did not try to deescalate the situation or stop Ms. Hirsch from openly demeaning Plaintiff in the presence of others.

11.     One of the Managers located on the opposite end of the floor, Vicki Shapiro, was disturbed by the commotion of Ms. Hirsch's outburst and approached Ms. Hirsch, Mr. Solem, and Plaintiff to

3

tell them they were being loud and that they should take their meeting to the conference room.

12.    Plaintiff felt that Mr. Solem was enabling Ms. Hirsch's hostile behavior towards her and she decided to not go to the conference room to avoid further hostility. Mr. Solem was not trying to de-escalate the situation and his behavior indicated a bias towards Ms. Hirsch.

13.    Ms. Hirsch did not face any disciplinary action for her hostility towards Plaintiff nor for being disruptive at work. This indicated to Plaintiff that NFCU management did not take Plaintiff's workplace concerns seriously. Worse still, Mr. Hernandez, Plaintiff's supervisor, admonished Plaintiff for this act sometime in September 2018, but failed to address the matter with Ms. Hirsch.

14.    Despite NFCU senior management having direct knowledge of these hostile communications, none of Plaintiff's or Ms. Hirsch's superiors ever spoke out or addressed the demeaning and disruptive treatment Ms. Hirsch was subjecting Plaintiff to.

15.    On or about September 11, 2018, Ms. Hirsch interfered in Plaintiff's project meetings that was not related to her projects and made efforts to make Plaintiff look bad in front of others. Ms. Hirsch disrupted the meeting and caused confusion and chaos. During the meeting, Ms. Hirsch tried to point out irrelevant and minute mistakes made by Plaintiff as if to make Plaintiff look bad in front of her colleagues and meeting attendants. Ms. Hirsch only targeted Plaintiff with this action.

16.    On or about September 11, 2018, Michelle Hirsch sent Plaintiff an inquiry about a project date that was assigned to Plaintiff. Plaintiff advised Ms. Hirsch that she could not resolve Ms. Hirsch's inquiry because she had not received the specific information and dates from the relevant vendor and that once Plaintiff received the necessary information, she would promptly update the implementation calendar to address Ms. Hirsch's concern. Plaintiff experienced numerous demeaning and hostile workplace communications from Ms. Hirsch that had other NFCU employees, senior NFCU staff, vendors, and non NFCU individuals copied in on the emails.

4

Throughout Ms. Hirsch's communications and emails to Plaintiff, Ms. Hirsch has continuously exhibited a pattern of being misleading, rude, and condescending.

17.     Despite Plaintiff's professional response and adherence to accuracy, Ms. Hirsch's response to the email chain and the various individuals copied in on the email chain was to accuse Plaintiff of failing to give information by stating "[f]ailure to share information amongst the team is detrimental to the business[,]" in a further attempt to demean Plaintiff and cast in her in a negative light. Ms. Hirsch used an irrelevant screenshot, that is not applicable to her initial inquiry, to showcase to everyone copied on the email that Plaintiff was allegedly not performing up to the required standard.

18.     Plaintiff replied to Ms. Hirsch's response by stating that she thought Ms. Hirsch was jumping to conclusions and that she wanted Ms. Hirsch to treat her with respect. Unlike Ms. Hirsch, Plaintiff did not copy every individual on the email thread but chose to only keep senior management so that they could address the situation.

19.     Despite Ms. Hirsch being the only instigator of the hostile interaction and the fact that Ms. Hirsch chose to escalate the situation by having everyone on the email thread read her hostile treatment of Plaintiff, on or about September 28, 2018, NFCU's management chose to admonish Plaintiff and not Ms. Hirsch, even though Plaintiff tried to deescalate the situation by choosing to only involve senior managers in her response. Plaintiff only wanted to be treated with respect and not face the continuous and hostile actions Ms. Hirsch subjected her to. Plaintiff is singled out and admonished for a 3 a.m. email

20.     On or about September 12, 2018, as part of her job, Plaintiff responded to an email from Lorraine Hercules(Caucasian female), a subject matter expert, around 3:00 a.m. Plaintiff had worked previously with Ms. Hercules and knows that Ms. Hercules usually consults vendors on her own when she needs to collect facts. Plaintiff confirmed that only internal NFCU employees were

5

copied on the email chain. No NFCU policy prohibits employees from sending work-related emails at any time and Ms. Hercules has sent Plaintiff emails at early morning hours before.

21.     As a result of Plaintiff's 3:00 a.m. email, on September 28, 2018, Mr. Carlo Hernandez(Asian male), Plaintiff's supervisor, issued Plaintiff a memorandum admonishing her for the 3:00 a.m. email, in addition to Plaintiff's email response to Ms. Hirsch. Mr. Hernandez informed Plaintiff that 3:00 a.m. replies are not acceptable, and that Plaintiff should not contact internal subject matter experts before Plaintiff contacted vendors and that he did not want Plaintiff to contact vendors at all. Other NFCU employees performing Plaintiff's job role, such as Aaron Stice (Caucasian male) and Wilson Roa(Caucasian male), did not have this restriction.

22.     Mr. Hernandez's restriction of Plaintiff's ability to contact vendors was unjustified, unfair, and biased since he had instructed only Plaintiff that she was not to contact vendors and no one else. This restriction was a serious obstacle to Plaintiff's professional development and morale since it singled out Plaintiff and had no legitimate reason. Furthermore, the admonishment memorandum issued to Plaintiff was not based on any policy Plaintiff violated, and early morning emails were part of NFCU's regular operations as Plaintiff has been the recipient of multiple early morning emails.

23.     Plaintiff's restriction from contacting vendors was backtracked by Mr. Solem and he permitted Plaintiff to contact vendors. Despite Ms. Solem's approval of Plaintiff's contact of vendors, he endorsed an annual review of Plaintiff that cited that Plaintiff was issued an admonishment memorandum for contacting a vendor. Plaintiff faced disparate treatment

24.     Sometime around January 30, 2018, Plaintiff had a doctor's appointment to attend and a commitment for her child's school activities. She requested to work from home in order to save time, but Mr. Hernandez denied her request. NFCU management denied Plaintiff's request to work from home but permitted other employees, such as Mr. Wilson Roa (Caucasian male) and Ms.

Jessica Seavey (Caucasian female) to work consecutive days from home. NFCU would approve work-from-home requests despite not all of them being valid emergencies. Some NFCU employees requested to work from home for reasons such as babysitting, dog sitting, attending to a sick spouse, or just because they can work from home. Although other employees in Plaintiff's section were allowed to work from home, Plaintiff was singled out and her work-from-home request was denied. Mr. Hernandez indicated to Plaintiff that work-from-home approvals were subject to his discretion but given that Mr. Hernandez exhibited bias and a lapse in fair judgment to plaintiff, she did not trust his judgment.

25.     Plaintiff's restriction to not contact vendors or attend meetings with them also subjected Plaintiff to further admonishment. Even though Plaintiff's management instructed her to not contact vendors or attend meetings with them- a vital task for Plaintiff's assignments- she faced further admonishment for not attending meetings with vendors. NFCU Management's contradictory instructions to Plaintiff and the subsequent admonishment Plaintiff faced as a result of those instructions exacerbated the hostile work environment Plaintiff was facing.

26.     Plaintiff's management team also subjected Plaintiff to disrespectful treatment. Ms. Lorraine would hold meetings relevant to Plaintiff's projects and would exclude Plaintiff from the information despite Plaintiff alerting her team that she needed this information. On or about February 28, 2018, Plaintiff emailed Ms. Lorraine to stop excluding her from essential meetings and information. Even though Plaintiff's team excluded Plaintiff from these meetings, NFCU management still held Plaintiff responsible for project operations despite excluding Plaintiff from meetings relevant to those projects.

27.     On or about September 28, 2018, Plaintiff attempted to resolve the issues she was facing by informing her team to treat her better. When that failed, she informed Aaron Morton, the staff assistant to the Executive Vice President Dave Tillary, and copied him on emails so show that there

7

was a serious integrity issue within the section, only to be told to go back to the chain of command.

28.     NFCU's failure to resolve the issue indicates that the Human Resources Department and Plaintiff's team were not taking this issue seriously and were having fun at Plaintiff's expense. NFCU's failure to address the situation and resolve it exacerbated some medical issues Plaintiff was facing, such as damage to her right hand that needs therapy, and NFCU denied Plaintiff time off to seek therapy. As a result of the hostile work environment Plaintiff was facing, she resigned from NFCU.

29.     NFCU, through its agents, demonstrated a pattern and practice of discriminating against Plaintiff on account of her race, by treating her differently than, and in a disparate manner, from her Caucasian colleagues.

30.     Ms. Hirsch subjected Plaintiff a hostile work environment on multiple occasions. In the presence of colleagues, Ms. Hirsch would subject Plaintiff to outbursts that referenced racist stereotypes, address Plaintiff rudely and disrespectfully in their professional correspondence to be read by all the staff and orchestrated an effort to make Plaintiff look bad in her job performance by interfering in Plaintiff's project meetings.

31.     Other acts of discrimination and a hostile work environment include restricting Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions.

32.     Defendant's actions directly and proximately caused Plaintiff to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further loss of future professional opportunities.

8

33.     Defendant engaged in its discriminatory actions described above with malice or with reckless indifference to Plaintiff's legal rights.

## COUNT I

### Violation of Section 1981 of the Civil Rights Act of 1866 42 U.S.C. § 1981
### (Race Discrimination)

34.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

35.     At all pertinent times, Defendant was an employer subject to provisions of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

36.     At all pertinent times, Plaintiff was an employee entitled to protection under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

37.     Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits discrimination on the basis of race with respect to an employee's compensation, terms, conditions, or privileges of employment.

38.     Defendant, in violation of 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful discrimination against Plaintiff. More specifically, Ms. Hirsch subjected Plaintiff to a disparate treatment on multiple occasions. In the presence of colleagues, Ms. Hirsch would subject Plaintiff to outbursts that referenced racist stereotypes, address Plaintiff rudely and disrespectfully in their professional correspondence, to be read by all the staff, and orchestrated an effort to make Plaintiff look bad in her job performance by interfering in Plaintiff's project meetings. Other acts of discrimination and a hostile work environment include restricting Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings relevant to Plaintiff's projects and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions.

9

39.    As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation over losing his job.

40.    Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices.

### COUNT II

### Violation of Section 1981 of the Civil Rights Act of 1866 42 U.S.C. § 1981 (Retaliation)

41.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

42.    At all pertinent times, Defendant was an employer subject to provisions of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

43.    At all pertinent times, Plaintiff was an employee entitled to protection under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

44.    Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 prohibits retaliation against an employee for, inter alia, complaining of or otherwise opposing discrimination based on race.

45.    Defendant, in violation of 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful retaliation against Plaintiff. Defendant NFCU, through its agents, retaliated against Plaintiff due to her EEOC complaint filed in 2010, and her later complaints about discriminatory treatment by Ms. Hirsch beginning in 2015.

46.    As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation over losing his job.

47.    Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other retaliatory practices.

10

**PRAYER FOR RELIEF**

WHEREFORE, Christel Johnson requests that this Court enter judgment in her favor against Defendants Navy Federal Credit Union, and to act further as follows: (a) Award Ms. Johnson compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated Counts One and Two, and in addition; (b) Award Ms. Johnson punitive and exemplary damages, to be determined by a jury, on Counts One and Two, not to exceed $350,000 (the statutory cap in Virginia); and in addition; (c) Award Ms. Johnson appropriate front pay and back pay, including all lost income and benefits of employment both past and future; and in addition; (d) Award Ms. Johnson compensation for any special damages she sustained as a result of the discrimination and retaliation, including her litigation costs and reasonable attorneys' fees; and in addition; (e) Award injunctive relief consisting of an order prohibiting Defendants Navy Federal Credit Union from engaging in further employment practices that create or tolerate a hostile, discriminatory, or retaliatory work environment based on race; and in addition (f) Award Ms. Johnson such other and further relief as may be appropriate under the circumstances.

**PLAINTIFF CHRISTEL JOHNSON DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

CHRISTEL JOHNSON

By Counsel By:

_____

THOMAS F. HENNESSY (VSB No. 32850)
Counsel for Plaintiff
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
Phone: (703) 865-8836
Fax: (703) 865-7633
thennessy@virginiawage.net

11

**JA16**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### (Alexandria Division)

|  |  |  |
|---|---|---|
| **CHRISTEL JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:23-cv-00794 (MSN/JFA)** |
| | ) | |
| **NAVY FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT NAVY FEDERAL CREDIT UNION'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Navy Federal Credit Union ("Navy Federal"), by counsel, hereby moves for an order dismissing with prejudice each of Plaintiff's claims in the Complaint for the reasons stated in the concurrently filed Memorandum in Support.

Dated: June 27, 2023                    Respectfully submitted,

                                         /s/ Edward Lee Isler
                                        Edward Lee Isler, Va. Bar No. 27985
                                        Micah E. Ticatch, Va. Bar. No. 83351
                                        ISLER DARE, P.C.
                                        1945 Old Gallows Road, Suite 650
                                        Vienna, Virginia 22182
                                        Phone: (703) 748-2690
                                        Facsimile: (703) 748-2695
                                        eisler@islerdare.com
                                        mticatch@islerdare.com
                                        *Counsel for Defendant Navy Federal Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2023, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which shall send notification to the following:

> Thomas F. Hennessy, Esq.
> The Hennessy Law Firm, P.L.L.C.
> 4015 Chain Bridge Road Suite G
> Fairfax, Virginia 22030
> thennessy@virginiawage.net

>     /s/ Edward Lee Isler
> Edward Lee Isler
> Va. Bar No. 27985
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> Phone: (703) 748-2690
> Facsimile: (703) 748-2695
> eisler@islerdare.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **CHRISTEL JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No. 1:23-cv-00794 (MSN/JFA)** |
| | ) |
| **NAVY FEDERAL CREDIT UNION,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

Defendant Navy Federal Credit Union ("Navy Federal") hereby submits this memorandum in support of its Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(6). For the reasons set forth below, Plaintiff fails to state a claim upon which relief can be granted and her claims should be dismissed with prejudice.

## I. BACKGROUND

Plaintiff, Christel Johnson, was employed with Navy Federal from August 1997 until her voluntary resignation in December 2019. On November 20, 2020, Plaintiff filed a complaint against Navy Federal in this Court, in *Johnson v. Navy Federal Credit Union,* No. 1:20-cv-01440 (E.D. Va.) ("*Johnson I*"), alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").

When Plaintiff first filed *Johnson I*, she was represented by two law firms, Randolph Law PLLC and Law Office of David A. Branch and Associates, PLLC. Before the Complaint in *Johnson I* was served, Plaintiff substituted counsel for a new firm, Cook Craig & Francuzenko, PLLC to represent her. In the middle of the discovery period, Cook Craig & Francuzenko withdrew from representation and Plaintiff proceeded *pro se*. Discovery was scheduled to close

1

on February 11, 2022 in *Johnson I*, but, because Plaintiff had failed to provide timely responses to written discovery, and only did so after the Court granted Navy Federal's Motion to Compel, Navy Federal was given permission to take her deposition on March 3, 2022. On the day of her deposition, Plaintiff retained her current law firm, Hennessy Law Firm, PLLC, to represent her. The day following Plaintiff's deposition, Plaintiff, through her counsel, moved for a voluntary dismissal. Although Navy Federal objected to the motion on the grounds that the discovery period had ended, the Court granted the voluntary dismissal on the express condition that Plaintiff pay certain of Navy Federal's costs and attorneys' fees if she elected to refile her claims. *Johnson I*, ECF 44.[1]

On June 6, 2022, Plaintiff refiled her claims in Fairfax County Circuit Court. ECF 1-1 ("Compl."). Navy Federal removed to this Court shortly after receiving service. The refiled Complaint remains essentially the same as the *Johnson I* complaint, other than the withdrawal of the Title VII claims, which became time-barred after the voluntary dismissal.

In the Complaint, Plaintiff asserts two counts under Section 1981 for "race discrimination" (Count I) and retaliation (Count II). However, the Complaint is somewhat ambiguous as to whether the claim in Count I is based on a theory of disparate treatment, hostile work environment, or constructive discharge. Regardless, as discussed below, because Plaintiff has failed to state any claim under Section 1981, regardless of what theory was intended, her Complaint should be dismissed. Further since this Complaint was filed *after* Plaintiff had the benefit of a full discovery

---

[1] In relevant part, the Court's Order states: "If Plaintiff refiles her case against Defendant, she will be ordered to pay Defendant's taxable costs in this matter and will be ordered to pay the attorneys' fees incurred in the filing of Defendant's successful Motion to Compel. Furthermore, all discovered materials in this matter will be permitted to be used in future cases between the parties." *Id.*

period in *Johnson I* and has had the benefit of four separate law firms to assist in developing her claims, there is no reason to afford Plaintiff a further opportunity to amend her pleading.

## II. <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must allege enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Robinson v. Am. Honda Motor Co., Inc.,* 551 F.3d 218, 222 (4th Cir. 2009). A court should dismiss a complaint for failure to state a claim if the Plaintiff has not set out "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Plausibility requires more than the "sheer possibility that a Defendant has acted unlawfully" and "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). The Plaintiff must instead "show" – not just "allege" – that she "is entitled to relief" as required by the federal rules. *Id.* "'Naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.* Pleadings that are "no more than conclusions are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 677). Accordingly, legal arguments and legal conclusions contained in a complaint should receive no weight from a court considering a Fed. R. Civ. P. 12(b)(6) challenge. *Twombly*, 550 U.S. at 555.

## III. <u>ARGUMENT</u>

### A.   <u>Plaintiff Has Not Stated A Claim For Hostile Environment Under Section 1981.</u>

As noted, Plaintiff's legal theory under Count I of the Complaint is somewhat unclear. To the extent that Count I of the Complaint was intended to be a claim of "hostile work environment"

under Section 1981, *see* Compl., ¶¶ 28, 30, 31, 38, that claim is fatally flawed and must be dismissed.

In order to state a claim for hostile work environment, Plaintiff must plead facts sufficient to establish each of the following:

> (1)    unwelcome conduct;
>
> (2)    that is based on the plaintiff's protected status;
>
> (3)    which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and
>
> (4)    which is imputable to the employer."

*High v. Wells Fargo Bank*, 2023 WL 2505540, at *7 (E.D. Va. 2023).

The Complaint identifies the following incidents during the relevant time period[2] which, as best can be discerned, comprise the basis for Plaintiff's hostile work environment claim:

- On June 6, 2018, Plaintiff was engaged in an animated conversation with a co-worker Michelle Hirsch, when Ms. Hirsch allegedly stated "don't roll your neck at me." Compl., ¶ 10. Plaintiff "felt that this was an offensive and racist comment." *Id.*

- Plaintiff claims that Ms. Hirsch was not disciplined for the above remark, but Plaintiff was "admonished" in September 2018. *Id.*, ¶ 13.

- On September 11, 2018, Ms. Hirsch allegedly "interfered in Plaintiff's project meetings" and "point[ed] out irrelevant and minute mistakes made by Plaintiff as if to make Plaintiff look bad." *Id.*, ¶ 15.

- That same day Ms. Hirsch allegedly also sent unspecified rude emails to Plaintiff and in one message "used an irrelevant screenshot . . . to showcase to everyone copied on the email that Plaintiff was allegedly not performing up to the required standard." *Id.*, ¶¶ 16-17.

- On September 12, 2018, Plaintiff sent an email to a co-worker Lorraine Hercules at 3:00 a.m., and was subsequently issued a "memorandum admonishing her for the 3:00 a.m. email." *Id.*, ¶ 20-21. On the same day, Plaintiff's supervisor restricted her authorization to contact vendors, a restriction that Plaintiff claims other Caucasian workers in the same position did not have. *Id.*

---

[2] Section 1981 has a four-year statute of limitations, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 385 (2004), meaning events occurring before June 6, 2018 are not actionable.

Assuming without conceding that the conduct above could be deemed "unwelcome," these facts are insufficient to satisfy any of the last three prongs of the *prima facie* test for hostile environment.

       1.     <u>*Based on the plaintiff's protected status*</u>.  Although the Complaint includes conclusory assertions suggesting the above conduct was motivated by racial animus, such factually unsupported contentions are insufficient under the *Iqbal* standard.  Here, Plaintiff provides no factual allegations whatsoever to support her conclusion that the conduct about which she complains was based on her race.  Plaintiff's subjective perceptions, without more, are insufficient to meet the requirements of the second element of the hostile environment test.  *See, e.g., Garrett v. Cape Fox Facilities Servs*. 2020 WL 265869, at *5-7 (E.D. Va. 2020) (plaintiff's "conclusory assertion of her feeling that she was discriminated against based on her race" insufficient to state a hostile environment claim under *Iqbal*); *Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 192 (4th Cir. 2020) (plaintiff's subjective interpretation that being called a "sheep" was a "race-based slur" was insufficient to demonstrate race-based discrimination).

       2.     <u>*Sufficiently severe or pervasive*</u>.  In order to plead the third element of a hostile work environment claim, a plaintiff "must clear a high bar" and "allege sufficient facts plausibly demonstrating that the workplace was permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment."  *High*, 2023 WL 2505540, at *8.  In determining whether the unwelcome conduct is objectively "severe or pervasive," courts "look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019).

The majority of Plaintiff's allegations are simply complaints that her co-worker, Ms. Hirsch, was rude to her during her employment. But, "rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable." *Id.* (quoting *Sunbelt Rentals*, 520 F.3d at 315-16).

For example, in *Jones v. Sun Pharm. Indus., Inc.*, 2020 WL 2501439, at \*7-8 (E.D. 2020), the court held that the plaintiff's allegations that her supervisor was frequently rude to her during meetings, failed to respond to her emails, and "hated" her, were insufficient to demonstrate a hostile environment claim. *See also Thomas v. Potter,* 2006 WL 2850623, at \*5 (E.D. Va. 2006) (rejecting hostile environment where plaintiff was "criticized for his work performance, received warnings for failing to report to work, and was subject to rude conduct.").

Other than Ms. Hirsch's allegedly rude conduct, the only other substantive allegation Plaintiff asserts to support her hostile environment claim is that Plaintiff was allegedly restricted in her contact with vendors, while other Caucasian workers were not. However, allegations of differential treatment for members outside the protected class is not sufficient to demonstrate severe or pervasive conduct. *See, e.g., Jones*, 2020 WL 2501439 at \*7 (finding no severe or pervasive conduct despite allegations that the employer failed to promote women on the same basis as males and terminated the plaintiff for a billing mistake for which male employees were not disciplined).

3.   "*Imputable to the employer.*"   Finally, it is also worth noting that the incidents depicted in the Complaint that fall within the applicable statute limitations focus primarily on conduct purportedly directed at Plaintiff by a coworker, Ms. Hirsch. To impute co-worker conduct to the employer, Plaintiff would need to "show that [Navy Federal] knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it." *Bazemore v. Best*

*Buy*, 957 F.3d 195, 201 (4th Cir. 2020). *Even if* Plaintiff were able to show Ms. Hirsch's conduct was somehow based upon Plaintiff's race and was sufficiently severe or pervasive (which it was not), she has failed to allege sufficient facts to demonstrate Navy Federal was aware of such conduct and failed to take appropriate action.

Given that Plaintiff has failed to plead any facts to support a finding that the conduct about which she complains: (1) was because of her race; (2) was severe or pervasive; or (3) can be imputed to Navy Federal, Plaintiff has clearly not met the "high bar" needed to plead a racially hostile work environment claim. Her claim should, therefore, be dismissed.

**B.**    **Plaintiff Has Not Stated A Claim For Disparate Treatment Discrimination.**

To the extent Plaintiff has attempted to allege a claim for "disparate treatment" in Count I, that claim must also be dismissed. As the Fourth Circuit has repeatedly held, "[t]o plead a case of disparate treatment sufficient to withstand a Rule 12(b)(6) motion, [plaintiff] must show: (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) *she was subjected to adverse employment action*; and (4) similarly situated employees outside her class received more favorable treatment. *Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 F. Appx. 351, 353 (4th Cir. 2009) (emphasis added) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)).

Here, even assuming without conceding that Plaintiff pled facts sufficient to meet the 1st, 2nd, and 4th prongs of the disparate treatment *prima facie* test, such a claim would still fail simply because there are no allegations that she was subjected to an adverse employment action.

An adverse employment action is an "'ultimate employment' action that affects hiring, granting leave, discharging, promoting, and compensating." *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007). The inequities that Plaintiff purports to have experienced – a coworker addressing her rudely and disrespectfully and interfering in her meetings, and her managers

restricting her interaction with vendors, refusing her work from home requests, excluding her from meetings, and giving her contradictory instructions – are simply not the types of actions that rise to the level of an adverse employment action.  *See, e.g., Brockman*, 217 F. App'x. at 206 (denial of request to work from home not an adverse employment action); *Maynard v. Old Dominion Univ.*, 2023 WL 2277098, at *9 (E.D. Va. 2023) (exclusion from meetings not an adverse employment action); *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 2018 WL 4512076, at *6 (W.D. Va. 2018) (ostracization by co-workers not adverse employment action).

Because Plaintiff has not pled that she suffered an adverse employment action, to the extent that Count I was intended to assert a claim of disparate treatment discrimination, such claim must be dismissed.

**C.    Plaintiff Cannot State A Claim For Constructive Discharge.**

It is far from clear as to whether Plaintiff intended to assert a claim for "constructive discharge," as that phrase does not appear anywhere in the Complaint.  On the other hand, Plaintiff does plead at the end of Paragraph 28 that "[a]s a result of the hostile work environment Plaintiff was facing, she resigned from NFCU."  Compl. ¶ 28.[3]  In any event, to the extent Plaintiff intended to allege a constructive discharge claim, it must be dismissed.

To state a claim for constructive discharge, Plaintiff would need to plead sufficient facts to establish that her working conditions were so intolerable that "a reasonable person in the employee's position would have felt *compelled* to resign, . . . that is, whether he or she would have

---

[3] Somewhat curiously, in two separate places, the Complaint alleges that "Plaintiff suffered and continues to suffer, among other things, extreme pain, embarrassment and humiliation *over losing his [sic] job*."  Compl., ¶¶ 39, 46 (emphasis added).  To the extent that these allegations imply that Plaintiff was involuntarily terminated from her employment with Navy Federal, such an implication is completely misplaced as it is undisputed that Plaintiff resigned her employment to take a position with another employer.

had *no choice* but to resign." *Salley v. Sch. Bd. of Amelia Cnty.*, 2021 WL 5760893, at *12 (E.D. Va. 2021) (quoting *Perkins*, 936 F.3d at 211) (emphasis in original). This is a "high standard" that is even more stringent than the "severe or pervasive" standard for hostile environment claims. *See High v. Wells Fargo Bank,* 2023 WL 2505540, at *11 (E.D. Va. 2023). Because the standard is higher, any plaintiff who fails to establish a hostile work environment claim, as is the case here, necessarily cannot establish a claim for constructive discharge. *Perkins*, 936 F.3d at 212. Thus, any constructive discharge claim must be dismissed for the same reason that the hostile work environment claim must be dismissed.

Moreover, in this case, Plaintiff has not even pled that her resignation was close in time to the allegedly hostile events pled in the Complaint. *See* Compl. ¶ 27.[4] Obviously, if Plaintiff was able to maintain her employment for a significant period of time after she experienced the alleged hostility, she cannot plausibly argue that she was compelled to resign. Furthermore, it is clear that the allegations in the Complaint, which only allege rude conduct and restrictions on her contact with vendors, are not the type for which a constructive discharge claim can be premised. *See, e.g., Perkins*, 936 F.3d at 212 (collecting cases and finding that the following scenarios do not provide facts sufficient to support a constructive discharge claim: (i) being yelled at and chastised in front of others and required to work with an injured back; (ii) being subjected to co-worker ostracism, denial of a management position and mandatory counseling; (iii) being dissatisfied with work assignments, subject to unfair criticism and unpleasant working conditions); *Salley v. Sch. Bd. of Amelia Cnty.*, 2021 WL 5760893, at *13 (E.D. Va. 2021).

---

[4] In fact, as Plaintiff and her Counsel are fully aware, her resignation actually occurred at the end of 2019 – over a year after the last alleged hostile event, which occurred in September 2018.

To the extent Plaintiff intended to allege a constructive discharge claim, such a claim should be dismissed.

**D.**     **Plaintiff Has Failed to State a Claim for Retaliation.**

In order to plead a claim for retaliation under Section 1981, Plaintiff must demonstrate: (i) that she engaged in a search warrant is a race-based protected activity; (ii) Navy Federal took materially adverse action against her; and (iii) a causal relationship exists between the protected activity and the adverse action.  *E.g., Ruffin v. Anthem, Inc.,* 2022 WL 4451328, at *9 (E.D. Va. 2022); *Salley*, 2021 WL 5760893 at *21.  Activity is only "protected" under Section 1981 when an employee has an objectively reasonable belief that unlawful <u>racial</u> discrimination occurred.  *Id.*

To be "materially adverse," an action must be the type of action that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination," but such conduct does not include "petty slights or minor annoyances."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Such nonactionable slights include "sporadic use of abusive language, gender-related jokes, and occasional teasing" as well "as personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers."  *Id.*

As best as can be discerned, Plaintiff's main allegation that she engaged in protected activity is that she "filed a previous complaint against NFCU in 2010" (the "2010 Charge"). Compl., ¶ 6.  However, Plaintiff does not provide *any* background on her 2010 Charge, and thus she fails to establish that the 2010 Charge was premised on an objectively reasonable belief that racial discrimination had actually occurred.  Therefore, her allegations do not show that the 2010 Charge was protected activity. [5]

---

[5] In fact, as Plaintiff and her counsel are well aware, the 2010 Charge asserted only a claim of *disability discrimination* under the Americans with Disabilities Act, and therefore was not protected activity under Section 1981.

# JA28

Further, even if the filing of the 2010 Charge was somehow protected activity, Plaintiff has utterly failed to establish the other two elements of a retaliation claim in connection with that Charge. Nowhere in the Complaint does Plaintiff identify what materially adverse actions she suffered in response to the Charge. The laundry list of events identified in the Complaint all seem to be the result of personality conflicts and minor annoyances that the Supreme Court has established as nonactionable.

Most fatal to the retaliation claim is that, even if Plaintiff could identify a material adverse action, she cannot remotely establish a causal connection between such action and the 2010 Charge. There are simply no allegations in the Complaint that would support such causation. In fact, Plaintiff does not even plead that any of the relevant actors (Ms. Hirsch, Ms. Hercules, and Mr. Hernandez) were <u>even aware</u> of the 2010 Charge. Obviously, these individuals could not have retaliated against Plaintiff if they did not even know about the 2010 Charge. *See, e.g., Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125-126 (4th Cir. 2021); *Jackson v. Nattrass,* 2014 WL 3697505, at *9 (E.D. Va. 2014).

Furthermore, while the Fourth Circuit allows causation to be inferred when close temporal proximity exists between the protected activity and the adverse action, such an inference ends when multiple months elapse between the two events. *See, e.g., Roberts*, 998 F. 3d at 127 (three month gap too long for causal inference); *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (two months was "sufficiently long so as to weaken significantly the inference of causation."). Additionally, when multiple years pass between those two events, the inference runs in the opposite direction – suggesting that the adverse action is entirely unrelated to the protected activity. *See, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d

653, 657 (4th Cir. 1998) (finding a negative inference when three-year gap between protected activity and adverse action).

In the instant case, there are <u>eight years</u> between the 2010 Charge and the relevant events listed in the Complaint. Because Plaintiff does not identify *any* facts to rebut the negative inference that attaches to that large a gap in time, she cannot establish causation. In sum, Plaintiff clearly cannot make out a claim for retaliation based on the 2010 Charge.

In Paragraph 45 of the Complaint, Plaintiff alleges that in addition to the 2010 Charge, her retaliation claim is also premised on "her later complaints about discriminatory treatment by Ms. Hirsch in 2015." However, the only other "complaint" identified in her pleading is located in Paragraph 27, which alleges that on September 28, 2018, Plaintiff purportedly informed the Staff Assistant to Navy Federal's Executive Vice President of "a serious integrity issue within the section." Compl., ¶ 27. As an initial point, Plaintiff does not (and cannot) plead any facts that would establish that this communication was based on an objectively reasonable concern of racial discrimination. More importantly, Plaintiff does not plead *any materially adverse event* that occurred after that September 28, 2018 communication. Thus, a retaliation claim cannot be based on this communication either.

Because Plaintiff has not come close to establishing a claim for retaliation, Count II of the Complaint should be dismissed.

**D.    <u>Plaintiff Claims Should Be Dismissed With Prejudice.</u>**

In the normal course, this Court typically affords a plaintiff at least one additional opportunity to replead her allegations on granting a motion to dismiss. However, in the unique circumstances of this case, the Court should exercise its discretion to deny Plaintiff that opportunity and instead dismiss the Complaint with prejudice.

In *Johnson I,* Plaintiff had the benefit of four separate law firms to advise her.  She also had the benefit of an entire discovery period.  At this point, if Plaintiff had additional facts to support her claims, she would have alleged them in the instant Complaint.  She did not file a more robust pleading because she cannot do so.  As such, leave to file another complaint should be denied.  Instead, the Complaint should be dismissed with prejudice.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, each of the Plaintiff's claims is flawed and should be dismissed with prejudice.

Dated: June 27, 2023                    Respectfully submitted,

                                         /s/ Edward Lee Isler
                                        Edward Lee Isler, Va. Bar No. 27985
                                        Micah E. Ticatch, Va. Bar No. 83351
                                        ISLER DARE, P.C.
                                        1945 Old Gallows Road. Suite 650
                                        Vienna, Virginia 22182
                                        Phone: (703) 748-2690
                                        Facsimile: (703) 748-2695
                                        eisler@islerdare.com
                                        mticatch@islerdare.com

                                        *Counsel for Navy Federal Credit Union*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of June, 2023, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which shall send notification to the following:

Thomas F. Hennessy, Esq.
The Hennessy Law Firm, P.L.L.C.
4015 Chain Bridge Road Suite G
Fairfax, Virginia 22030
thennessy@virginiawage.net


/s/ Edward Lee Isler
Edward Lee Isler
Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| **CHRISTEL JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Case No.: 1:23-cv-00794** |
| | ) |
| **NAVY FEDERAL CREDIT UNION,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## FIRST AMENDED COMPLAINT

Comes now Plaintiff Christel Johnson (hereinafter "Plaintiff Johnson" or "Plaintiff"), by and through counsel, and hereby files her Amended Complaint against Defendant Navy Federal Credit Union ("NFCU"). Plaintiff Johnson seeks relief pursuant to Section 1981 of the Civil Rights Act of 1866, and 42 U.S.C. § 1981 based on NFCU's disparate treatment of her based on her race (Black).

## PARTIES

1.    Plaintiff Christel Johnson is a resident and citizen of the Commonwealth of Virginia

2.    Defendant NFCU is a Virginia corporation in good standing and maintains an agent for service of process in the Commonwealth of Virginia. NFCU conducts banking services and is headquartered in Vienna, Virginia.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this Complaint because state courts enjoy concurrent jurisdiction over section 1981 causes.

4.    Venue is proper in this court in that all or some events or omissions giving rise to Plaintiff's claims occurred in Fairfax County.

1

**FACTS**

5.      Plaintiff Johnson is an African American female and was formerly employed as a Software

Quality Assurance Test Specialist. She had been employed by NFCU since August 1997. She has

over twenty years of experience in banking, ten of which have been focused on Software Quality

Assurance and ensuring customer-facing applications are beneficial to NFCU's operations. Ms.

Johnson holds certifications as a Tester Foundation Level (CTFL), Scrum Master, and ITIL, which

enhance her software testing capabilities. As part of her job at NFCU, Plaintiff writes, modifies,

and tests scripts for software applications related to NFCU's banking operations, communicates the

test results to the implementation and development teams, and maintains and updates test databases

and documentation. Ms. Johnson's performance at NFCU earned her several performance awards,

such as the Sustained Superior Performance Award.

6.      Plaintiff had filed a previous EEOC complaint against NFCU in 2010. After she filed an

EEOC complaint, she faced other discrimination and a hostile work environment. The Management

team, including Nina Crawford, Assistant Manager, and Timothy Solem (Caucasian male),

Manager, as well as several other employees subjected Plaintiff to inappropriate behavior during

meetings, and in plain sight of vendors, the Senior Vice President of NFCU, Gale Lewis, and other

people from different sections of NFCU. Around December 2015, Plaintiff had unused leave time,

but Ms. Crawford denied Plaintiff from using that leave and forced Plaintiff to "donate" that leave

time to NFCU's leave bank. Ms. Crawford asked only Plaintiff to do so. This was irregular and

there was no legitimate reason to treat Plaintiff differently than other similarly situated employees.

Ms. Crawford did not ask anyone else to use their time, and as a result Plaintiff was singled out.

7.      Ms. Michelle Hirsch (Caucasian female), a Credit Card Systems specialist, was initially

designated as Plaintiff's mentor by Ms. Crawford sometime around January 2015 and Plaintiff was

instructed to consult Ms. Hirsch for guidance. Ms. Michelle Hirsch was similarly situated to

Plaintiff and did not have any supervisory authority over Plaintiff. Even though Ms. Hirsch was

continuously rude, uncooperative, and did not  fulfill all of her duties, she was promoted despite the

Human Resources Department's knowledge of her hostile activities towards Plaintiff. On several

occasions, Ms. Hirsh provided Plaintiff with incorrect instructions regarding her work duties to set

up Plaintiff for failure. This made Plaintiff suspicious of Ms. Hirsch's instructions, and Plaintiff did

her due diligence by requesting information from other sources to perform her tasks successfully.

8.      Ms. Hirsch provided Plaintiff with unreliable information for work-related tasks. On one

occasion, Ms. Hirsch gave Plaintiff inaccurate product codes and as a result, Plaintiff resorted to

asking the external vendor for the information to prevent a workplace mishap. This indicated to the

Plaintiff that she could not rely on Ms. Hirsch and that she would have to seek out accurate

information from vendors when she felt she needed more accurate information.

9.      On one occasion in 2016, Ms. Hirsch scheduled a meeting with Plaintiff and when Plaintiff

approached Ms. Hirsch's desk to start preparing the meetings, Ms. Hirsch raised her hand to

Plaintiff's face and told Plaintiff to "talk to the hand" in front of other section employees and

Plaintiff's colleagues. This made Plaintiff feel disrespected and that Ms. Hirsch and NFCU were

making Plaintiff a laughing matter. Ms. Hirsch did not treat anyone else like this, and only Plaintiff

faced this treatment.

10.      On or about June 6, 2018, Michelle Hirsch made an outburst that disrupted the work of

others. Plaintiff was engaged in a conversation with Mr. Solem, and he pulled Ms. Hirsch into the

conversation. When Ms. Hirsch engaged Plaintiff, she launched into a loud outburst and addressed

Plaintiff in an offensive and racist matter by stating "don't roll your neck at me" as if Plaintiff was

being aggressive. Plaintiff was not rolling her neck and felt that this was an offensive and racist

comment as it feeds into stereotypes of African American women being aggressive. Mr. Solem did

not try to deescalate the situation or stop Ms. Hirsch from openly demeaning Plaintiff in the

presence of others.

11.     One of the Managers located on the opposite end of the floor, Vicki Shapiro, was disturbed

by the commotion of Ms. Hirsch's outburst and approached Ms. Hirsch, Mr. Solem, and Plaintiff to

tell them they were being loud and that they should take their meeting to the conference room.

12.     Plaintiff felt that Mr. Solem was enabling Ms. Hirsch's hostile behavior towards her, and

she decided to not go to the conference room to avoid further hostility. Mr. Solem was not trying to

de-escalate the situation and his behavior indicated a bias in favor of Ms. Hirsch.

13.     Plaintiff reported the conduct of Ms. Hirsch to the human resources department, but

Plaintiff does not believe that Defendant ever disciplined Ms. Hirsch her for her hostility towards

Plaintiff nor for being disruptive at work because Ms. Hirsch's hostile behavior toward Plaintiff did

not change, and Ms. Hirsch was promoted by Defendant. This indicated to Plaintiff that NFCU

management did not take Plaintiff's workplace concerns seriously. Worse still, Mr. Hernandez,

Plaintiff's supervisor, admonished Plaintiff for this act sometime in September 2018, but on

information and belief, failed to address the matter with Ms. Hirsch.

14.     Despite NFCU senior management having direct knowledge of these hostile

communications, Plaintiff believes for the reasons stated herein that none of Plaintiff's or Ms.

Hirsch's superiors ever spoke out or addressed the demeaning and disruptive treatment to which

Ms. Hirsch was subjecting Plaintiff.

15.     On or about September 11, 2018, Ms. Hirsch interfered in Plaintiff's project meetings that

were not related to her projects and made efforts to make Plaintiff look bad in front of others. Ms.

Hirsch disrupted the meeting and caused confusion and chaos. During the meeting, Ms. Hirsch

tried to point out irrelevant and minute mistakes made by Plaintiff as if to make Plaintiff look bad

in front of her colleagues and meeting attendees. Ms. Hirsch only targeted Plaintiff with this action.

16.     On or about September 11, 2018, Michelle Hirsch sent Plaintiff an inquiry about a project

4

date that was assigned to Plaintiff. Plaintiff advised Ms. Hirsch that she could not resolve Ms.

Hirsch's inquiry because she had not received the specific information and dates from the relevant

vendor and that once Plaintiff received the necessary information, she would promptly update the

implementation calendar to address Ms. Hirsch's concern. Plaintiff experienced numerous

demeaning and hostile workplace email communications from Ms. Hirsch on which other NFCU

employees, senior NFCU staff, vendors, and non NFCU individuals were copied. Throughout Ms.

Hirsch's communications and emails to Plaintiff, Ms. Hirsch has continuously exhibited a pattern

of being misleading, rude, and condescending.

17.     Despite Plaintiff's professional response and adherence to accuracy, Ms. Hirsch's intent in

copying other individuals in her email communications with Plaintiff was to accuse Plaintiff of

failing to give information by stating "[f]ailure to share information amongst the team is

detrimental to the business[,]" For example, Ms. Hirsch used an irrelevant screenshot, that was not

applicable to her initial inquiry, to showcase to everyone copied on the email that Plaintiff was

allegedly not performing up to the required standard.

18.     Plaintiff replied to Ms. Hirsch's response by stating that she thought Ms. Hirsch was

jumping to conclusions and that she wanted Ms. Hirsch to treat her with respect. Unlike Ms.

Hirsch, Plaintiff did not copy every individual on the email thread but chose to only keep senior

management so that they could address the situation.

19.     Despite Ms. Hirsch being the only instigator of the hostile interaction and the fact that Ms.

Hirsch chose to escalate the situation by having everyone on the email thread read her hostile

treatment of Plaintiff, on or about September 28, 2018, NFCU's management issued Plaintiff a

formal, written Memorandum of Warning (hereinafter "Reprimand") for alleged unprofessional

communication, specifically referencing in that written warning Ms. Hirsch's hostile confrontation

with Plaintiff on June 6, 2018, an incident for which Plaintiff, based on information set forth

herein, does not believe Ms. Hirsch was discipled. For the reasons set forth herein, Plaintiff

believes that Defendant chose to discipline her and not Ms. Hirsch, even though Plaintiff tried to

deescalate the situation by choosing to only involve senior managers in her response. The Plaintiff

only wanted to be treated with respect and not face the continuous and hostile actions to which Ms.

Hirsch subjected her.

20.     Under Defendant's disciplinary practices Plaintiff's Reprimand exacerbated future discipline

in a way that created a future adverse employment effect in that the Reprimand itself states that

"[f]urther failure to adhere to Navy Federal's policies or procedures may result in disciplinary action,

up to and including termination of your Navy Federal employment." The Reprimand was one step in

a multi-step disciplinary policy that could lead to termination. Moreover, in or around December

2018, Plaintiff's formal evaluation gave her a rating of "Needs Improvement" in the category

"communicates effectively." Referring to the incident described in described in ¶19 of this Amended

Complaint, this formal evaluation also states that Christel was counselled and issued a Memorandum

of Warning for unprofessional communication when addressing her peers and management. She was

also counseled on ensuring our procedures are followed regarding communication with our vender

and our Subject Matter Expert (SME)." This adverse rating was a product of the Reprimand described

in ¶19 of this Amended Complaint and was an exacerbation of that discipline. *See, e.g., Hinton v.

Virginia Union Univ.*, 185 F. Supp. 3d 807, 821 (E.D. Va. 2016).

21.     Despite the discriminatory discipline of the Reprimand and the exacerbation of that discipline

as described herein, Plaintiff's job performance with Defendant was always satisfactory or better as

reflected in her December 2018 evaluation, which gave her an overall Manager Rating of

"Successfully Meets Expec."

22.     On or about September 12, 2018, as part of her job, Plaintiff responded to an email from

Lorraine Hercules (Caucasian female), a subject matter expert, around 3:00 a.m. Plaintiff had

worked previously with Ms. Hercules and knows that Ms. Hercules usually consults vendors on her own when she needs to collect facts. Plaintiff confirmed that only internal NFCU employees were copied on the email chain. No NFCU policy prohibits employees from sending work-related emails at any time and Ms. Hercules has sent Plaintiff emails at early morning hours before. Plaintiff was singled out and admonished for sending an email at 3 a.m. when Plaintiff routinely received such emails from others.

23.     As a result of Plaintiff's 3:00 a.m. email, on September 28, 2018, Mr. Carlo Hernandez (Asian male), Plaintiff's supervisor, issued Plaintiff a memorandum admonishing her for the 3:00 a.m. email, in addition to Plaintiff's email response to Ms. Hirsch. Mr. Hernandez informed Plaintiff that 3:00 a.m. replies are not acceptable, and that Plaintiff should not contact internal subject matter experts before Plaintiff contacted vendors and that he did not want Plaintiff to contact vendors at all. No other NFCU employees performing Plaintiff's job role, such as Aaron Stice (Caucasian male) and Wilson Roa (Caucasian male), was subject to this restriction.

24.     Mr. Hernandez's restriction of Plaintiff's ability to contact vendors was unjustified, unfair, and biased since he had instructed only Plaintiff that she was not to contact vendors and had not imposed this restriction on any other similarly situated white employee such as Aaron Stice or Wilson Roa. This restriction was a serious obstacle to Plaintiff's professional development and morale since it singled out Plaintiff and had no legitimate reason. Furthermore, the admonishment memorandum issued to Plaintiff was not based on any policy Plaintiff violated, and early morning emails were part of NFCU's regular operations as Plaintiff has been the recipient of multiple early morning emails.

25.     Plaintiff's restriction from contacting vendors was backtracked by Mr. Solem and he permitted Plaintiff to contact vendors. Despite Ms. Solem's approval of Plaintiff's contact of vendors, he endorsed an annual review of Plaintiff that cited that Plaintiff was issued an

**JA39**

admonishment memorandum for contacting a vendor. Plaintiff faced disparate treatment in that other similarly situated employees were not subject to this restriction.

26.    Sometime around January 30, 2018, Plaintiff had a doctor's appointment to attend and a commitment for her child's school activities. She requested to work from home to save time, but Mr. Hernandez denied her request. NFCU management denied Plaintiff's request to work from home but permitted other employees, such as Mr. Wilson Roa (Caucasian male) and Ms. Jessica Seavey (Caucasian female) to work consecutive days from home. NFCU would approve work-from-home requests despite not all of them being valid emergencies. Some NFCU employees requested to work from home for reasons such as babysitting, dog sitting, attending to a sick spouse, or just because they can work from home. Although other employees in Plaintiff's section were allowed to work from home, Plaintiff was singled out and her work-from-home request was denied. Mr. Hernandez indicated to Plaintiff that work-from-home approvals were subject to his discretion but given that Mr. Hernandez exhibited bias and a lapse in fair judgment to plaintiff, she did not trust his judgment.

27.    Plaintiff's restriction to not contact vendors or attend meetings with them also subjected Plaintiff to further admonishment. Even though Plaintiff's management instructed her to not contact vendors or attend meetings with them- a vital task for Plaintiff's assignments- she faced further admonishment for not attending meetings with vendors. NFCU Management's contradictory instructions to Plaintiff and the subsequent admonishment Plaintiff faced because of those instructions exacerbated the hostile work environment Plaintiff was facing.

28.    Plaintiff's management team also subjected Plaintiff to disrespectful treatment. Ms. Lorraine would hold meetings relevant to Plaintiff's projects and would exclude Plaintiff from the information despite Plaintiff alerting her team that she needed this information. On or about February 28, 2018, Plaintiff emailed Ms. Lorraine to stop excluding her from essential meetings

8

and information. Even though Plaintiff's team excluded Plaintiff from these meetings, NFCU

management still held Plaintiff responsible for project operations despite excluding Plaintiff from

meetings relevant to those projects.

29.    On or about September 28, 2018, Plaintiff attempted to resolve the issues she was facing by

informing her team to treat her better. When that failed, she informed Aaron Morton, the staff

assistant to the Executive Vice President Dave Tillary, and copied him on emails so show that there

was a serious integrity issue within the section, only to be told to go back to the chain of command.

30.    NFCU's failure to resolve the issue indicates that the Human Resources Department and

Plaintiff's team were not taking this issue seriously and were having fun at Plaintiff's expense.

NFCU's failure to address the situation and resolve it exacerbated some medical issues Plaintiff

was facing, such as damage to her right hand that needs therapy, and NFCU denied Plaintiff time

off to seek therapy. As a result of the hostile work environment Plaintiff was facing, she resigned

from NFCU.

31.    NFCU, through its agents, demonstrated a pattern and practice of discriminating against

Plaintiff on account of her race, by treating her differently than, and in a disparate manner, from

her Caucasian colleagues.

32.    Ms. Hirsch subjected Plaintiff to a hostile work environment on multiple occasions. In the

presence of colleagues, Ms. Hirsch would subject Plaintiff to outbursts that referenced racist

stereotypes, address Plaintiff rudely and disrespectfully in their professional correspondence to be

read by all the staff and orchestrated an effort to make Plaintiff look bad in her job performance by

interfering in Plaintiff's project meetings.

33.    Other acts of discrimination and a hostile work environment include restricting Plaintiff's

interaction with vendors, a vital task for Plaintiff's performance and development in addition to

refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and

information relevant to Plaintiff's projects and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions.

34.    Defendant's actions directly and proximately caused Plaintiff to suffer and to continue to suffer loss of income and other financial benefits, emotional distress, pain, suffering, stress, humiliation, loss of enjoyment of life, and damage to her reputation and career, and further loss of future professional opportunities.

35.    Defendant engaged in the discriminatory actions described above with malice or with reckless indifference to Plaintiff's legal rights.

## COUNT I

### Violation of Section 1981 of the Civil Rights Act of 1866 42 U.S.C. § 1981
### (Disparate Treatment Based on Plaintiff's Race)

36.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

37.    At all pertinent times, Defendant was an employer subject to provisions of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

38.    At all pertinent times, Plaintiff was an employee entitled to protection under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

39.    Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits discrimination because of race with respect to an employee's compensation, terms, conditions, or privileges of employment.

40.    Plaintiff is African American and therefore a member of that class of persons protected by 42 U.S.C. § 1981.

41.    As alleged herein, at all times during her employment by Defendant Plaintiff's job performance was satisfactory as reflected in her December 2018 evaluation.

42.    Defendant subjected Plaintiff to adverse employment action as described herein in that the

**JA42**

Reprimand, under the Defendant's disciplinary practices, exacerbated future discipline in a way that plausibly could be expected to create a future adverse employment effect. For example, in addition to the facts alleged herein, under Defendant's written policies a Disciplinary Action such as the Reprimand received by Plaintiff could negatively affect Plaintiff's eligibility to receive a bonus.

43.    As set forth in this Amended Complaint, similarly situated employees outside Plaintiff's class, such as  Michelle Hirsch, who is white, received more favorable treatment by Defendant.

44.    Defendant, in violation of 42 U.S.C. § 1981, knowingly and intentionally engaged in unlawful discrimination against Plaintiff. More specifically, Ms. Hirsch subjected Plaintiff to disparate treatment on multiple occasions. In the presence of colleagues, Ms. Hirsch would subject Plaintiff to outbursts that referenced racist stereotypes, addressed Plaintiff rudely and disrespectfully in their professional correspondence, to be read by all the staff, and orchestrated an effort to make Plaintiff look bad in her job performance by interfering in Plaintiff's project meetings. Other acts of discrimination and a hostile work environment include restricting Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings relevant to Plaintiff's projects and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions.

45.    As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer, among other things, extreme pain, embarrassment, and humiliation.

46.    Defendant had no legitimate business reason for any such acts. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices.

**PRAYER FOR RELIEF**

WHEREFORE, Christel Johnson requests that this Court enter judgment in her favor against Defendant Navy Federal Credit Union, and to act further as follows: (a) Award Ms. Johnson compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated Count One, and in addition; (b) Award Ms. Johnson punitive and exemplary damages, to be determined by a jury, on Counts One; and in addition; (c) Award Ms. Johnson appropriate front pay and back pay, including all lost income and benefits of employment both past and future; and in addition; (d) Award Ms. Johnson compensation for any special damages she sustained as a result of the discrimination and retaliation, including her litigation costs and reasonable attorneys' fees; and in addition; (e) Award injunctive relief consisting of an order prohibiting Defendants Navy Federal Credit Union from engaging in further employment practices that create or tolerate a hostile, discriminatory, or retaliatory work environment based on race; and in addition (f) Award Ms. Johnson such other and further relief as may be appropriate under the circumstances.

**PLAINTIFF CHRISTEL JOHNSON DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

CHRISTEL JOHNSON

By Counsel By:

_____/s/_____
 THOMAS F. HENNESSY (VSB No. 32850)
Counsel for Plaintiff
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
Phone: (703) 865-8836
Fax: (703) 865-7633
thennessy@virginiawage.net

CHRISTEL JOHNSON

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of July 2023, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

By: _____/s/_____
THOMAS F. HENNESSY (VSB No. 32850)
Counsel for Plaintiff
4015 Chain Bridge Road Suite G
Fairfax, Virginia 22030
Phone: (703) 865-8836
Fax: (703) 865-7633
thennessy@virginiawage.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **CHRISTEL JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:23-cv-00794 (MSN/JFA)** |
| ) | |
| **NAVY FEDERAL CREDIT UNION,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**DEFENDANT NAVY FEDERAL CREDIT UNION'S**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Navy Federal

Credit Union ("Navy Federal"), by counsel, hereby moves for an order dismissing with prejudice

Plaintiff's First Amended Complaint for the reasons stated in the concurrently filed Memorandum

in Support.


Dated: July 25, 2023                        Respectfully submitted,

                                            ___/s/ Edward Lee Isler_____
                                            Edward Lee Isler, Va. Bar No. 27985
                                            Micah E. Ticatch, Va. Bar. No. 83351
                                            ISLER DARE, P.C.
                                            1945 Old Gallows Road, Suite 650
                                            Vienna, Virginia 22182
                                            Phone: (703) 748-2690
                                            Facsimile: (703) 748-2695
                                            eisler@islerdare.com
                                            mticatch@islerdare.com
                                            *Counsel for Defendant Navy Federal Credit Union*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of July, 2023, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which shall send notification to the following:

>Thomas F. Hennessy, Esq.
>The Hennessy Law Firm, P.L.L.C.
>4015 Chain Bridge Road Suite G
>Fairfax, Virginia 22030
>thennessy@virginiawage.net

>    /s/ Edward Lee Isler
>Edward Lee Isler
>Va. Bar No. 27985
>ISLER DARE, P.C.
>1945 Old Gallows Road, Suite 650
>Vienna, Virginia 22182
>Phone: (703) 748-2690
>Facsimile: (703) 748-2695
>eisler@islerdare.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **CHRISTEL JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 1:23-cv-00794 (MSN/JFA)** |
| | ) |
| **NAVY FEDERAL CREDIT UNION,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant Navy Federal Credit Union ("Navy Federal") hereby submits this memorandum in support of its Motion to Dismiss the claims asserted by Plaintiff Christel Johnson in the First Amended Complaint pursuant to Rule 12(b)(6). For the reasons set forth below, Plaintiff fails to state a claim upon which relief can be granted and her claims should be dismissed with prejudice.

## I. BACKGROUND

1.  Plaintiff was employed with Navy Federal from August 1997 until her voluntary resignation in December 2019.

2.  On November 20, 2020, Plaintiff filed a complaint against Navy Federal in this Court, in *Johnson v. Navy Federal Credit Union,* No. 1:20-cv-01440 (E.D. Va.) ("*Johnson I*"), alleging discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). *Johnson I*, ECF 1.

3.  When Plaintiff first filed *Johnson I*, she was represented by two law firms, Randolph Law and Law Office of David A. Branch and Associates, PLLC. *Johnson I*, ECF 1.

4.  Before the Complaint in *Johnson I* was served, Plaintiff substituted counsel for a new firm, Cook Craig & Francuzenko, PLLC to represent her. *Johnson I*, ECF 8.

5.      On the date Plaintiff's discovery responses were due in *Johnson I*, Cook Craig & Francuzenko withdrew and Plaintiff proceeded *pro se*.  *Johnson I*, ECF 23-25.

6.      Discovery was scheduled to close on February 11, 2022 in *Johnson I*; however, Plaintiff failed to provide timely responses to written discovery, and only did so after the Court granted Navy Federal's Motion to Compel. *Johnson I*, ECF 32.

7.      Consequently, Navy Federal was given permission to take her deposition outside the discovery period on March 3, 2022.  *Johnson I,* ECF 38.

8.      On the day of her deposition, Plaintiff's current counsel, Hennessy Law Firm, PLLC, entered an appearance.  *Johnson I,* ECF 39.

9.      The day following Plaintiff's deposition, Plaintiff, through her counsel, moved for a voluntary dismissal.  *Johnson I*, ECF 40.

10.      Although Navy Federal objected to the motion for voluntary dismissal on the grounds that the discovery period had ended, *see Johnson I*, ECF 43, the Court granted the voluntary dismissal on the express condition that Plaintiff pay certain of Navy Federal's costs and attorneys' fees if she elected to refile her claims.  *Johnson I*, ECF 44.[1]

11.      On June 6, 2022, Plaintiff refiled her claims in Fairfax County Circuit Court. ECF 1-1.  Navy Federal removed to this Court shortly after receiving service.  ECF 1.

12.      The refiled Complaint was essentially the same as the *Johnson I* complaint, other than the withdrawal of the Title VII claims, which had become time-barred after the voluntary dismissal.  The Complaint was somewhat ambiguous as to what claims were being asserted, but it

---

[1] In relevant part, the Court's Order states: "If Plaintiff refiles her case against Defendant, she will be ordered to pay Defendant's taxable costs in this matter and will be ordered to pay the attorneys' fees incurred in the filing of Defendant's successful Motion to Compel. Furthermore, all discovered materials in this matter will be permitted to be used in future cases between the parties."  *Id.* Plaintiff, by counsel, has now paid these amounts.

appeared to allege claims under Section 1981 for disparate treatment, hostile work environment, constructive discharge, and retaliation. *See* ECF 1-1.

13.    On June 27, 2023, Navy Federal timely moved to dismiss the Complaint because that pleading did not sufficiently allege facts to support the asserted claims.  ECF 7.

14.    In response to the motion to dismiss the initial Complaint, Plaintiff, rather than defend her pleading, filed her First Amended Complaint ("FAC") under Rule 15(a)(1)(B). ECF 11.

## II.  <u>SUMMARY OF ARGUMENT</u>

As best as can be discerned, in the First Amended Complaint, Plaintiff has withdrawn any claims for constructive discharge and retaliation, but continues to assert a claim for disparate treatment and, possibly, a claim for hostile work environment.  However, the First Amended Complaint still fails to state either claim.

Plaintiff's claim for disparate treatment based on Plaintiff's race under Section 1981 fails because Plaintiff has not (and cannot) cannot plead facts to demonstrate that she was subjected to any adverse employment action or that any such adverse action occurred under circumstances giving rise to an inference of unlawful discrimination.

Moreover, to the extent that Plaintiff is alleging a claim for a racially hostile work environment, that claim also is flawed and must be dismissed because Plaintiff has not pled facts from which a factfinder could plausibly conclude that Plaintiff was subjected to conduct "based on her protected status" which is "sufficiently severe or pervasive" to create an abusive work environment, or that she was subjected to any racially-based conduct that is imputable to the employer.

Finally, since the First Amended Complaint is Plaintiff's second complaint filed *after* Plaintiff had the benefit of a full discovery period in *Johnson I* (and the third complaint overall), and given that Plaintiff has had the benefit of four separate law firms to assist in developing her claims, Navy Federal respectfully requests that, in addition to granting the motion to dismiss, the Court dismiss Plaintiff's claims with prejudice.

### III.  <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must allege enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Robinson v. Am. Honda Motor Co., Inc.,* 551 F.3d 218, 222 (4th Cir. 2009).  A court should dismiss a complaint for failure to state a claim if the Plaintiff has not set out "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*.  Plausibility requires more than the "sheer possibility that a Defendant has acted unlawfully" and "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570).  The Plaintiff must instead "show" – not just "allege" – that she "is entitled to relief" as required by the federal rules.  *Id.* "'Naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Id.*  Pleadings that are "no more than conclusions are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 677).  Accordingly, legal arguments and legal conclusions contained in a complaint should receive no weight from a court considering a Fed. R. Civ. P. 12(b)(6) challenge. *Twombly*, 550 U.S. at 555.

IV. **ARGUMENT**

A.     **Plaintiff Has Not Stated A Claim For Disparate Treatment Discrimination.**

To plead a case of disparate treatment under Section 1981, a plaintiff must allege: (1) membership in a protected class, (2) satisfactory job performance, (3) an adverse employment action, and (4) that such adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (citing *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)).

Here, even assuming without conceding that Plaintiff pled facts sufficient to meet the first and second prongs of the disparate treatment *prima facie* test, such a claim would still fail simply because she cannot demonstrate that she was subjected to any adverse employment action or that any such adverse action occurred under circumstances giving rise to an inference of unlawful discrimination.

An adverse employment action is an "'ultimate employment' action that affects hiring, granting leave, discharging, promoting, and compensating." *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007). In *Jensen-Graf v. Chesapeake Employers Ins. Co.*, the Fourth Circuit held that a disparate treatment claim was properly dismissed because the plaintiff "failed to allege that she received lower pay, was demoted, was passed over for a promotion, failed to receive a bonus, or given significantly different responsibilities." 616 F. App'x 596, 598 (4th Cir. 2015).

Just as in that case, the Plaintiff in the instant matter has not pled that she was demoted, passed over for promotion, assigned significantly different responsibilities, or experienced any reduction in pay. As such, Plaintiff did not suffer any adverse employment action. Indeed, the case law is clear that neither a written warning, nor a low performance evaluation, are adverse employment actions in their own right. *See, e.g., Thompson v. Potomac Electric Power Co.*, 312

F.3d 645, 651-652 (4th Cir. 2002); *Salmoiraghi v. Veritiss, LLC*, 2022 WL 1036769, at *8 (E.D. Va. 2022) (Nachmanoff, J.) (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)). Such measures are "actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (emphasis added) (citing *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir.2000)).

Despite this consistent and overwhelming body of case law, Plaintiff alleges she suffered an adverse action when she received a written Memorandum of Warning in September 2018 and cites the case of *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 821 (E.D. Va. 2016) in support. *See* FAC ¶¶ 19-20. Plaintiff further alleges that this Memorandum eventually led to a lower rating ("needs improvement") in one category ("communicates effectively") on her 2018 year-end performance evaluation. *See* FAC ¶ 20. Notably, Plaintiff also alleges that in her December 2018 evaluation, she received an overall rating of "Successfully Meets Expec[tations]". *See* FAC ¶ 21.

Perhaps in recognition that a written warning does not constitute an adverse employment action, Plaintiff attempts to save her claim by adding:

> the Reprimand, under the Defendant's disciplinary practices, exacerbated future discipline in a way that plausibly could be expected to create a future adverse employment effect. For example, in addition to the facts alleged herein, under Defendant's written policies a Disciplinary Action such as the Reprimand received by Plaintiff could negatively affect Plaintiff's eligibility to receive a bonus.

FAC ¶ 42 (emphasis added). In other words, Plaintiff is apparently suggesting that because the written warning could have, *hypothetically*, led to a reduced bonus or other actual adverse action, it should be considered an adverse employment action in its own right. That is not the law. If it

were, every employer warning or disciplinary action would be an adverse employment action, as every such warning *could potentially* contribute to an eventual adverse action down the road.

Moreover, by the time Plaintiff filed her first case (*Johnson I*) in 2020 and this instant action in 2022, she would have known by the passage of time whether the warning Memorandum in September 2018 had led to any loss of pay or other adverse employment action, and presumably would have pled as such.  The fact that Plaintiff has <u>not</u> alleged (and cannot in good faith allege) that she actually suffered any loss of employment, loss of pay, or other adverse action in connection with the written warning or performance evaluation completely undermines Plaintiff's effort to rely on *Hinton*.[2]  As such, neither the written warning nor the single rating of "needs improvement" in one category on an otherwise "successfully meets expectations" performance evaluation can be deemed an adverse action.  *E.g., James*, 368 F.3d at 377.

Plaintiff also cannot make out the fourth prong test of the prima facie test – that such adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination.  Even if the written warning, or single rating of needs improvement in an otherwise satisfactory performance appraisal, could be viewed as an adverse employment action (which it cannot), there is nothing in the First Amended Complaint that would suggest or support a finding that such an action occurred under circumstances giving rise to an inference of unlawful discrimination.  The First Amended Complaint is completely devoid of any racially derogatory language, epithets, or incidents.  *See Laber v. Austin*, 2023 WL 2579466 (E.D. Va. 2023)

---

[2] Ironically, even the result in *Hinton* does not support the position that Plaintiff seems to be asserting in the First Amended Complaint.  In that case, the court rejected the claims of the plaintiff that the two reprimands he received from his supervisor constituted an adverse employment action for purposes of a disparate treatment claim.  185 F Supp. 3d at 820 ("Hinton urges that it is permissible generally to infer that any reprimand will result in a likelihood of more serious future discipline. That, however, is inconsistent with settled Title VII jurisprudence that not every workplace wrong has a federal remedy.")

(Nachmanoff, J.) (finding that plaintiff failed to allege any facts to suggest his non-selection for position was based on his sex).

Because Plaintiff has not pled that she suffered any actionable adverse employment action, or that any such action occurred under circumstances giving rise to an inference of discrimination, Plaintiff's disparate treatment claim must be dismissed.

**B.    Plaintiff Has Not Stated A Claim For Hostile Environment Under Section 1981.**

To the extent that Count I of the First Amended Complaint is also intended to be a claim of "hostile work environment" under Section 1981, *see* FAC, ¶¶ 30, 32, 33, 44, that claim is also fatally flawed.  In order to state a claim for hostile work environment, Plaintiff must plead facts sufficient to establish each of the following:

(1)    unwelcome conduct;

(2)    that is based on the plaintiff's protected status;

(3)    which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and

(4)    which is imputable to the employer."

*High v. Wells Fargo Bank*, 2023 WL 2505540, at *7 (E.D. Va. 2023) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc).

The First Amended Complaint identifies the following incidents during the relevant time period[3] which, as best can be discerned, comprise the basis for Plaintiff's hostile work environment claim:

- On June 6, 2018, Plaintiff was engaged in an animated conversation with a co-worker Michelle Hirsch, when Ms. Hirsch allegedly stated "don't roll your neck at me."  FAC, ¶ 10.  Plaintiff "felt that this was an offensive and racist comment." *Id.*

- Plaintiff alleges that she believes Ms. Hirsch was not disciplined for the above remark, but Plaintiff was "admonished" in September 2018. *Id.*, ¶ 13.

---

[3] Section 1981 has a four-year statute of limitations, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 385 (2004), meaning events occurring before June 6, 2018 are not actionable.

- On September 11, 2018, Ms. Hirsch allegedly "interfered in Plaintiff's project meetings" and "point[ed] out irrelevant and minute mistakes made by Plaintiff as if to make Plaintiff look bad." *Id.*, ¶ 15.

- That same day Ms. Hirsch allegedly also sent unspecified rude emails to Plaintiff and in one message "used an irrelevant screenshot . . . to showcase to everyone copied on the email that Plaintiff was allegedly not performing up to the required standard." *Id.*, ¶¶ 16-17.

- On September 12, 2018, Plaintiff sent an email to a co-worker Lorraine Hercules at 3:00 a.m., and was subsequently issued a "memorandum admonishing her for the 3:00 a.m. email." *Id.*, ¶ 22-23. On the same day, Plaintiff's supervisor restricted her authorization to contact vendors, a restriction that Plaintiff claims other Caucasian workers in the same position did not have. *Id.*

Assuming without conceding that the conduct above could be deemed "unwelcome," these facts are insufficient to satisfy any of the last three prongs of the *prima facie* test for hostile environment.

1. "*Based on the plaintiff's protected status*." Although the First Amended Complaint includes conclusory assertions suggesting the above conduct was motivated by racial animus, such factually unsupported contentions are insufficient under the *Iqbal* standard. Plaintiff's subjective perceptions, without more, are insufficient to meet the requirements of the second element of the hostile environment test. *See, e.g., Garrett v. Cape Fox Facilities Servs.* 2020 WL 265869, at *5-7 (E.D. Va. 2020) (plaintiff's "conclusory assertion of her feeling that she was discriminated against based on her race" insufficient to state a hostile environment claim under *Iqbal*); *Sorto v. AutoZone, Inc.*, 821 F. App'x 188, 192 (4th Cir. 2020) (plaintiff's subjective interpretation that being called a "sheep" was a "race-based slur" was insufficient to demonstrate race-based discrimination).

The only comment that Plaintiff argues was race-based is her co-worker Ms. Hirsch allegedly telling her during a heated exchange: "don't roll your neck at me." Although Plaintiff claims this remark was "racist," it is not obvious how Plaintiff arrived at that conclusion. Rolling one's neck, like rolling one's eyes, is a form of non-verbal communication that often indicates

disagreement and disrespect to the other party.  To state the obvious, a person of any race is equally capable of moving their neck in such a fashion, and there is no reason to think Ms. Hirsch's comment, asking Plaintiff to refrain from such behavior, had anything to do with Plaintiff's race rather than her physical actions.  Just as in *Sorto*, Plaintiff's subjective interpretation that Ms. Hirsch's comment was "racist," simply does not make it so.

Because there are no allegations sufficient to demonstrate the unwelcome conduct was based on Plaintiff's race, she cannot meet the second element of a hostile environment claim.

2.    "*Sufficiently severe or pervasive*."  In order to plead the third element of a hostile work environment claim, a plaintiff "must clear a high bar" and "allege sufficient facts plausibly demonstrating that the workplace was permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment."  *High*, 2023 WL 2505540, at *8.  In determining whether the unwelcome conduct is objectively "severe or pervasive," courts "look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019).

The majority of Plaintiff's allegations are simply complaints that her co-worker, Ms. Hirsch, was rude to her during her employment.  But "rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable."  *Id.* (quoting *Sunbelt Rentals*, 520 F.3d at 315-16).

For example, in *Coleman v. Whitley*, 2022 WL 16630570, at *3 (4th Cir. 2022), a co-worker's rude remark that the plaintiff was only hired because she was African American and another co-worker's refusal to provide training were found to be insufficient to establish severe or

pervasive conduct.  Likewise, in *Jones v. Sun Pharm. Indus., Inc.*, 2020 WL 2501439, at *7-8 (E.D. Va. 2020), the court held that the plaintiff's allegations that her supervisor was frequently rude to her during meetings, failed to respond to her emails, and "hated" her, were insufficient to demonstrate a hostile environment claim.  *See also Thomas v. Potter,* 2006 WL 2850623, at *5 (E.D. Va. 2006) (rejecting hostile environment where plaintiff was "criticized for his work performance, received warnings for failing to report to work, and was subject to rude conduct.").

Other than Ms. Hirsch's allegedly rude conduct, the only other substantive allegation Plaintiff asserts to support her hostile environment claim is that Plaintiff was allegedly restricted in her contact with vendors, while other Caucasian workers were not.  However, allegations of differential treatment for members outside the protected class is not sufficient to demonstrate severe or pervasive conduct.  *See, e.g., Jones*, 2020 WL 2501439 at *7 (finding no severe or pervasive conduct despite allegations that the employer failed to promote women on the same basis as males and terminated the plaintiff for a billing mistake for which male employees were not disciplined).

Thus, even if Plaintiff could demonstrate that the conduct of which she complains was racially motivated (which she cannot), the hostile environment claim would still fail because the alleged conduct was not severe or pervasive.

3.    "*Imputable to the employer.*"  Finally, it is also worth noting that the incidents depicted in the First Amended Complaint that fall within the applicable statute limitations focus primarily on conduct purportedly directed at Plaintiff by a co-worker, Ms. Hirsch.  To impute co-worker conduct to the employer, Plaintiff would need to "show that [Navy Federal] knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it."  *Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020).  The only basis for asserting

11

knowledge by Navy Federal appears to be an alleged report regarding Ms. Hirsch's alleged statement "don't roll your neck at me" in a conversation with Plaintiff.  *See* FAC ¶ 13.  But even if such a report occurred, because there is nothing to indicate racial bias in that event, it would not have put Navy Federal on any type of notice of racial harassment by Ms. Hirsch.  Thus, *even if* Plaintiff were able to show Ms. Hirsch's conduct was somehow based upon Plaintiff's race and was sufficiently severe or pervasive (which it was not), she has failed to allege sufficient facts to demonstrate Navy Federal was aware of such conduct and failed to take appropriate action.

Given that Plaintiff has failed to plead any facts to support a finding that the conduct about which she complains: (1) was because of her race; (2) was severe or pervasive; or (3) can be imputed to Navy Federal, Plaintiff has clearly not met the "high bar" needed to plead a racially hostile work environment claim.  Her claim should, therefore, be dismissed.

**C.**    **Plaintiff's Claims Should Be Dismissed With Prejudice.**

The Court should deny Plaintiff the opportunity of any further amendment and instead dismiss her claims with prejudice.  In *Johnson I,* Plaintiff had the benefit of four separate law firms to advise her and further had the opportunity to develop her case through an entire discovery period.   Despite this, Plaintiff's First Amended Complaint, filed only after reviewing Navy Federal's Motion to Dismiss the initial Complaint, <u>still</u> does not state a claim against Navy Federal, and Plaintiff should not be given a *fourth* opportunity to refile her claims.

The Fourth Circuit has held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986).

"In the Eastern District of Virginia, an amendment may be considered futile where Plaintiffs have previously had two full opportunities to plead their claim." *Field v GMAC LLC,* 660 F. Supp. 2d 679, 690 (E.D. Va. 2008) (quoting *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.,* 432 F. Supp. 2d 571, 595 (E.D.Va.2006) and *Travelers Cas. & Sur. Co. v. Danai,* 2005 WL 2045398, at *3 (E.D. Va. 2005)); *see also Hamilton v. Newby*, 2020 WL 972752 (E.D. Va. 2020) (granting Rule 12(b)(6) motion to dismiss and declining to grant leave to amend where the plaintiff has already had two opportunities to state an actionable claim for relief).

Between the Complaint filed in *Johnson I*, the initial Complaint in this action, and the instant First Amended Complaint, Plaintiff has already had three opportunities to plead a viable cause of action.  As noted above, she has not done so.  Allowing Plaintiff a fourth opportunity to plead her case not only would be futile, but would be prejudicial to Navy Federal, in that it would be compelled to spend additional resources to dismiss Plaintiff's claim once again.  As such, Plaintiff's claims should be dismissed with prejudice, and she should be denied leave to file another complaint.

## IV.  **CONCLUSION**

For the reasons stated above, Plaintiff's remaining claims are flawed and should be dismissed with prejudice.

Dated: July 25, 2023

Respectfully submitted,

   /s/ Edward Lee Isler
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

13

*Counsel for Defendant*
*Navy Federal Credit Union*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July, 2023, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which shall send notification to the following:

> Thomas F. Hennessy, Esq.
> The Hennessy Law Firm, P.L.L.C.
> 4015 Chain Bridge Road Suite G
> Fairfax, Virginia 22030
> thennessy@virginiawage.net

> /s/ Edward Lee Isler
> Edward Lee Isler
> Va. Bar No. 27985
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> Phone: (703) 748-2690
> Facsimile: (703) 748-2695
> eisler@islerdare.com

IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **CHRISTEL JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | )   **Case No.: 1:23-cv-00794** |
| **NAVY FEDERAL CREDIT UNION,** | ) |
| | ) |
| **Defendant.** | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff CHRISTEL JOHNSON ("Plaintiff"), by and through undersigned counsel,
hereby submits this Response to Defendant's Motion to Dismiss Plaintiff's First Amended
Complaint.

### Summary of Argument

In her First Amended Complaint Plaintiff alleges violation of Section 1981 of the Civil
Rights Act of 1866, 42 U.S.C. § 1981, based solely on the theory of disparate treatment based on
her race (Black). First Amended Complaint, ECF 11 (Count I).

With regard to a discrimination claim under Title VII or 42 U.S.C. § 1981, a plaintiff is
not required to plead a prima facie case of discrimination to defeat a motion to dismiss.
*Swierkiewicz v. Sorema*, 534 U.S. 506, 510-11 (2002) (explaining that the prima facie case under
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) "is an evidentiary standard, not a
pleading requirement."); *McCleary-Evans v. Md. Dep't of Transportation*, 780 F.3d 582, 584-85
(4th Cir. 2015). To survive a motion to dismiss Plaintiff need only plausibly allege

discriminatory conduct because of her protected status.

Although not required to do so to defeat Defendant's motion to dismiss, Plaintiff has alleged facts sufficient to show adverse employment actions within the meaning of 42 U.S.C. § 1981, namely Defendant's reprimand of her and the collateral consequences flowing therefrom, including restriction of Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development, in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects, and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions. See, e.g., ECF 11, at ¶¶ 23, 24, 25, 26, 33.

Although not required to do so to defeat Defendant's motion to dismiss, Plaintiff has alleged sufficient facts to show that similarly situated employees outside the protected class received more favorable treatment. Although not required to do so to defeat Defendant's motion to dismiss, Plaintiff has also alleged sufficient facts to show that the Reprimand occurred under circumstances giving rise to an inference of unlawful discrimination in that she was treated less favorably than other, similarly situated employees outside her protected class. See, e.g., ECF 11, at ¶¶ 23, 24, 25, 26, 33.

Plaintiff has stated a claim upon which relief can be granted to her under 42 U.S.C. § 1981, and this Court should deny Defendant's motion to dismiss.

### **Plaintiff's Allegations of Fact**

Plaintiff Johnson is an African American female and was formerly employed as a Software Quality Assurance Test Specialist by Defendant Navy Federal Credit Union ("NFCU"). She had been employed by NFCU since August 1997. ECF 11, at ¶ 5.

On or about June 6, 2018, Michelle Hirsch, who is white, made an outburst that disrupted

the work of others. Plaintiff was engaged in a conversation with a co-worker Mr. Solem, and he

pulled Ms. Hirsch into the conversation. When Ms. Hirsch engaged Plaintiff, she launched into a

loud outburst and addressed Plaintiff in an offensive and racist matter by stating "don't roll your

neck at me" as if Plaintiff was being aggressive. Plaintiff was not rolling her neck and felt that

this was an offensive and racist comment as it feeds into stereotypes of African American

women being aggressive. Mr. Solem did not try to deescalate the situation or stop Ms. Hirsch

from openly demeaning Plaintiff in the presence of others. ECF 11, at ¶ 10.

Plaintiff reported the conduct of Ms. Hirsch to the human resources department, but

Plaintiff does not believe that Defendant ever disciplined Ms. Hirsch her for her hostility towards

Plaintiff nor for being disruptive at work because Ms. Hirsch's hostile behavior toward Plaintiff

did not change, and Ms. Hirsch was subsequently promoted by Defendant. This indicated to

Plaintiff that NFCU management did not take Plaintiff's workplace concerns seriously. Worse

still, Mr. Hernandez (Asian), Plaintiff's supervisor, admonished Plaintiff for this act sometime in

September 2018, but on information and belief, failed to address the matter with Ms. Hirsch.

ECF 11, at ¶ 13.

Despite Ms. Hirsch being the only instigator of the hostile interaction and the fact that

Ms. Hirsch chose to escalate the situation by having everyone on the email thread read her

hostile treatment of Plaintiff, on or about September 28, 2018, NFCU's management issued

Plaintiff a formal, written Memorandum of Warning (hereinafter "Reprimand") for alleged

unprofessional communication, specifically referencing in that written warning Ms. Hirsch's

hostile confrontation with Plaintiff on June 6, 2018, an incident for which Plaintiff, based on

information set forth herein, does not believe Ms. Hirsch was discipled. For the reasons set forth

herein, Plaintiff  believes that Defendant chose to discipline her and not Ms. Hirsch, even though

Plaintiff tried to deescalate the situation by choosing to only involve senior managers in her response. The Plaintiff only wanted to be treated with respect and not face the continuous and hostile actions to which Ms. Hirsch subjected her. ECF 11, at ¶ 19.

Under Defendant's disciplinary practices Plaintiff's Reprimand exacerbated future discipline in a way that created a future adverse employment effect in that the Reprimand itself states that "[f]urther failure to adhere to Navy Federal's policies or procedures may result in disciplinary action, up to and including termination of your Navy Federal employment." The Reprimand was one step in a multi-step disciplinary policy that could lead to termination. Moreover, in or around December 2018, Plaintiff's formal evaluation gave her a rating of "Needs Improvement" in the category "communicates effectively." Referring to the incident described in ¶19 of the Amended Complaint (ECF 11), this formal evaluation also states that Plaintiff was counselled and issued a Memorandum of Warning for unprofessional communication when addressing her peers and management. She was also counseled on ensuring that NFCU procedures are followed regarding communication with NFCU venders and NFCU Subject Matter Experts (SME). This adverse rating was a product of the Reprimand described in ¶19 of Plaintiff's Amended Complaint (ECF 11) and was an exacerbation of that discipline. ECF 11, at ¶ 20.

Despite the discriminatory discipline of the Reprimand and the exacerbation of that discipline as described herein, Plaintiff's job performance with Defendant was always satisfactory or better as reflected in her December 2018 evaluation, which gave her an overall Manager Rating of "Successfully Meets Expec." ECF 11, at ¶ 21.

On or about September 12, 2018, as part of her job, Plaintiff responded to an email from Lorraine Hercules (Caucasian female), a subject matter expert, around 3:00 a.m. Plaintiff had

worked previously with Ms. Hercules and knows that Ms. Hercules usually consults vendors on her own when she needs to collect facts. Plaintiff confirmed that only internal NFCU employees were copied on the email chain. No NFCU policy prohibits employees from sending work-related emails at any time and Ms. Hercules has sent Plaintiff emails at early morning hours before. Plaintiff was singled out and admonished for sending an email at 3 a.m. when Plaintiff routinely received such emails from others. ECF 11, at ¶ 22.

As a result of Plaintiff's 3:00 a.m. email, on September 28, 2018, Mr. Carlo Hernandez (Asian male), Plaintiff's supervisor, issued Plaintiff a memorandum admonishing her for the 3:00 a.m. email, in addition to Plaintiff's email response to Ms. Hirsch. Mr. Hernandez informed Plaintiff that 3:00 a.m. replies are not acceptable, and that Plaintiff should not contact internal subject matter experts before Plaintiff contacted vendors *and that he did not want Plaintiff to contact vendors at all.* No other NFCU employees performing Plaintiff's job role, such as Aaron Stice (Caucasian male) and Wilson Roa (Caucasian male), was subject to this restriction. ECF 11, at ¶ 23.

Mr. Hernandez's restriction of Plaintiff's ability to contact vendors was unjustified, unfair, and biased since he had instructed only Plaintiff that she was not to contact vendors and had not imposed this restriction on any other similarly situated white employee such as Aaron Stice or Wilson Roa. This restriction was a serious obstacle to Plaintiff's professional development and morale since it singled out Plaintiff and was not supported by any legitimate reason. Furthermore, the admonishment memorandum issued to Plaintiff was not based on any policy Plaintiff violated, and early morning emails were part of NFCU's regular operations as Plaintiff has been the recipient of multiple early morning emails. ECF 11, at ¶ 24.

Plaintiff's restriction from contacting vendors was backtracked by Mr. Solem and he

permitted Plaintiff to contact vendors. Despite Ms. Solem's approval of Plaintiff's contact of

vendors, Mr. Hernandez endorsed an annual review of Plaintiff that cited that Plaintiff was

issued an admonishment memorandum for contacting a vendor. Plaintiff faced disparate

treatment in that other similarly situated employees were not subject to this restriction. ECF 11,

at ¶ 25.

Sometime around January 30, 2018, Plaintiff had a doctor's appointment to attend and a

commitment for her child's school activities. She requested to work from home to save time, but

Mr. Hernandez denied her request. NFCU management denied Plaintiff's request to work from

home but permitted other employees, such as Mr. Wilson Roa (Caucasian male) and Ms. Jessica

Seavey (Caucasian female) to work consecutive days from home. NFCU would approve work-

from-home requests despite not all of them being valid emergencies. Some NFCU employees

requested to work from home for reasons such as babysitting, dog sitting, attending to a sick

spouse, or just because they can work from home. Although other employees in Plaintiff's

section were allowed to work from home, Plaintiff was singled out and her work-from-home

request was denied. Mr. Hernandez indicated to Plaintiff that work-from-home approvals were

subject to his discretion but given that Mr. Hernandez exhibited bias and a lapse in fair judgment

to plaintiff, she did not trust his judgment. ECF 11, at ¶ 26.

Plaintiff's restriction to not contact vendors or attend meetings with them also subjected

Plaintiff to further admonishment. Even though Plaintiff's management instructed her to not

contact vendors or attend meetings with them- a vital task for Plaintiff's assignments- she faced

further admonishment for not attending meetings with vendors. NFCU Management's

contradictory instructions to Plaintiff and the subsequent admonishment Plaintiff faced because

of those instructions exacerbated the hostile work environment Plaintiff was facing. ECF 11, at ¶

27.

Plaintiff's management team also subjected Plaintiff to disrespectful treatment. Ms. Lorraine would hold meetings relevant to Plaintiff's projects and would exclude Plaintiff from the information despite Plaintiff alerting her team that she needed this information. On or about February 28, 2018, Plaintiff emailed Ms. Lorraine to stop excluding her from essential meetings and information. Even though Plaintiff's team excluded Plaintiff from these meetings, NFCU management still held Plaintiff responsible for project operations despite excluding Plaintiff from meetings relevant to those projects. ECF 11, at ¶ 28.

Other acts of discrimination and a hostile work environment include restricting Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions. ECF 11, at ¶ 33.

Defendant subjected Plaintiff to adverse employment action as described herein in that the Reprimand, under the Defendant's disciplinary practices, exacerbated future discipline in a way that plausibly could be expected to create a future adverse employment effect. For example, in addition to the facts alleged herein, under Defendant's written policies a Disciplinary Action such as the Reprimand received by Plaintiff could negatively affect Plaintiff's eligibility to receive a bonus. ECF 11, at ¶ 42.

.      As set forth in this Amended Complaint, similarly situated employees outside Plaintiff's class, such as  Michelle Hirsch, who is white, received more favorable treatment by Defendant. ECF 11, at ¶ 43. Michelle Hirsch was similarly situated to Plaintiff Johnson and did not have any

supervisory authority over Plaintiff. ECF 11, at ¶ 7.

### Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil,* 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed.R.Civ.P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550

8

U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). As the Fourth Circuit recently reiterated, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, __ Fed. Appx. __, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022). But the plaintiff does not have to show that he is likely to obtain relief; if the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim. *Twombly*, 127 S.Ct. at 1969 & n. 8. *Merritt v. Wellpoint, Inc*., 615 F.Supp.2d 440 (E.D. Va. 2009).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019)

(alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

To resolve a Rule 12(b)(6) motion, the question for the court is whether the plaintiff has stated a plausible claim for relief. *Twombly*, 550 U.S. at 570. With regard to a discrimination claim under Title VII or 42 U.S.C. § 1981, a plaintiff is not required to plead a prima facie case of discrimination. *McCleary-Evans v. Md. Dep't of Transportation*, 780 F.3d 582, 584-85 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016); *see Felder v. MGM National Harbor, LLC*, Fed. App'x, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (per curiam). "Instead, a plaintiff must allege sufficient facts 'to satisfy the elements of a cause of action created by [the applicable] statute.'" *Felder*, 2022 WL 2871905, at * 1 (*quoting McCleary-Evans*, 780 F.3d at 585) (alteration in *Felder*). Therefore, to survive a motion to dismiss, a plaintiff must "plausibly allege" discriminatory conduct because of her protected status, such as race or sex. *Felder*, 2022 WL 2871905, at *1; see 42 U.S.C. § 2000e-2(a)(1)

In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) "is an

evidentiary standard, not a pleading requirement." Further, the Court stated that it had "never

indicated that the requirements for establishing a prima facie case under *McDonnell Douglas*

also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to

dismiss." *Swierkiewicz,* 534 U.S. at 511. Thus, the Court said: "[A]n employment discrimination

plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515.

        In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), *cert. denied*, __U.S.

__, 138 S.Ct. 558 (2017), the Fourth Circuit indicated that although a plaintiff "need not plead

facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to

dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" However, the

Fourth Circuit has "cautioned that 'a well-pleaded complaint may proceed even if it strikes a

savvy judge that actual proof of those facts is improbable'. . . ." *Felder*, 2022 WL 2871905, at *1

(quoting *Woods*, 855 F.3d at 652).

<u>**Argument**</u>

**A.      Plaintiff has alleged adverse employment actions within the meaning of § 1981.**

        As illustrated above, to survive a motion to dismiss, a claim for discrimination need not

establish a prima facie case. But such a claim must allege facts "'that plausibly state a violation

of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC,* 959 F.3d 605, 617 (4th Cir.

2020) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187,190 (4th Cir. 2010), *aff'd*, 566

U.S. 30 (2012). "To establish a prima facie disparate treatment claim under Title VII or § 1981,

the plaintiff must show: (1) membership in a protected class; (2) adverse employment action; (3)

satisfactory job performance; and (4) that similarly situated employees outside the protected

class received more favorable treatment." *Cepeda v. Bd. of Educ. of Baltimore Cty*., 814 F. Supp.

2d 500, 510 (D. Md. 2011) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir.

2004)). Even though she is not required to allege facts sufficient to make out a prima facie case to survive a motion to dismiss, Plaintiff Johnson has alleged these facts. Defendant asserts that Plaintiff has failed to allege facts sufficient to show at the pleading stage that it took adverse action against her, or that similarly situated employees outside the protected class received more favorable treatment (this element is expressed by Defendant as an allegation that the "adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination."). Although not required to plead these elements of the prima facie case to survive this motion to dismiss, Plaintiff addresses each of these elements in turn.

To begin, "the existence of some adverse employment action is required" for a plaintiff to prevail on a Title VII discrimination claim. *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 219 (4th Cir. 2007); *James v. Booz-Allen & Hamilton, Inc*., 368 F.3d 371, 375 (4th Cir. 2004). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland,* 487 F.3d at 219 (cleaned up).

At bottom, an adverse action must have a "significant detrimental effect" on an employee. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999); *see Lee v. Mattis*, PX-17-2836, 2018 WL 3439261, at *9 (D. Md. July 18, 2018) (concluding that plaintiff sufficiently plead an adverse employment action where she alleged that "she received an unreasonable workload and deadlines, including an excessive amount of overtime, and was forbidden from telecommuting or taking any time off from work") (internal quotation marks omitted). *See also Hinton v. Virginia Union University*, 185 F.Supp.3d 807, 819 (E.D. Va. 2016) ("[T]he Fourth Circuit and its district courts have hewed to the view that neither oral nor written reprimands constitute the sort of adverse employment action cognizable under Title VII *unless plaintiff also alleges that the reprimand has potential collateral consequences that rise to the level of an adverse employment*

*action*.") (emphasis added). Significantly, the "loss of job title or supervisory responsibility" may constitute an adverse action. *Boone*, 178 F.3d at 255.

The collateral consequences of Plaintiff's receipt of Defendant's Reprimand include restriction of Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development, in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects, and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions. Although not required to make any prima facie showing to defeat Defendant's motion to dismiss, Plaintiff's allegations of fact rise to the level of adverse employment actions within the meaning of 42 U.S.C. § 1981. See, e.g., ECF 11, at ¶¶ 23, 24, 25, 26, 33.

     **B.**     **Plaintiff has alleged that similarly situated employees outside the protected class received more favorable treatment.**

Plaintiff has alleged that similarly situated employees outside Plaintiff's class, such as Michelle Hirsch, who is white, received more favorable treatment by Defendant. ECF 11, at ¶ 43. Plaintiff has alleged that on or about September 28, 2018, NFCU's management issued Plaintiff a formal, written Reprimand for alleged unprofessional communication, specifically referencing in that written warning Ms. Hirsch's hostile and racist confrontation with Plaintiff on June 6, 2018, an incident for which Plaintiff, based on information set forth herein, does not believe Ms. Hirsch was discipled. ECF 11, at ¶ ¶ 10, 13, 19. Plaintiff reported the conduct of Ms. Hirsch to the human resources department, but Plaintiff does not believe that Defendant ever disciplined Ms. Hirsch her for her hostility towards Plaintiff nor for being disruptive at work because Ms. Hirsch's hostile behavior toward Plaintiff did not change, and Ms. Hirsch was subsequently promoted by Defendant. ECF 11, at ¶ 13. Plaintiff has alleged that on or about September 28, 2018, NFCU's management issued Plaintiff a formal, written Reprimand for

13

## JA75

alleged unprofessional communication, specifically referencing in that written warning Ms. Hirsch's hostile confrontation with Plaintiff on June 6, 2018, an incident for which Plaintiff, based on information set forth herein, does not believe Ms. Hirsch was discipled. ECF 11, at ¶ 19.

Plaintiff also alleges that her supervisor Mr. Hernandez's treated her differently than similarly situated white employees such as Aaron Stice or Wilson Roa when he unfairly and unjustifiably restricted her, and only her, ability to contact vendors, thereby seriously impeding her professional development. This instruction not to contact vendors was not imposed on any other similarly situated white employee. ECF 11, at ¶ 26.

In sum, acts of discrimination and disparate treatment to which Defendant subjected Plaintiff but not other similarly situated white employees include restricting Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development, in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions. ECF 11, at ¶¶ 23, 24, 25, 26, 33.

Although not required to do so to defeat Defendant's motion to dismiss, Plaintiff has alleged sufficient facts to show that similarly situated employees outside the protected class received more favorable treatment. Although not required to do so to defeat Defendant's motion to dismiss, Plaintiff has also alleged sufficient facts to show that the Reprimand occurred under circumstances giving rise to an inference of unlawful discrimination in that she was treated less favorably than other, similarly situated employees outside her protected class.

14

## Conclusion

For the reasons set forth above, Plaintiff Johnson respectfully requests that this Court

deny Defendant's Motion to Dismiss.

CHRISTEL JOHNSON

By Counsel

By: _____/s/_____
    Thomas F. Hennessy, Esq. (VSB: 32850)
**THE HENNESSY LAW FIRM, PLLC**
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
Phone:    (703) 865-8836
Facsimile: (703) 865-7633
thennessy@virginiawage.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of August 2023, I will electronically file a true
and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, which will
then send a notification of such filing to counsel of record.

By Counsel:

_____/s/_____

Thomas F. Hennessy, VSB #32850
**THE HENNESSY LAW FIRM, PLLC**
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
T: (703) 865-8836
F: (703) 865-7633
E: thennessy@virginiawage.net
*Counsel for Plaintiff*

15

**JA77**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### (Alexandria Division)

| | |
|---|---|
| **CHRISTEL JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. 1:23-cv-00794 (MSN/JFA)** |
| | ) |
| **NAVY FEDERAL CREDIT UNION,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

### DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT
### OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Navy Federal Credit Union ("Navy Federal") hereby submits this Reply Brief in further support of its Motion to Dismiss First Amended Complaint. Plaintiff's Response to Defendant's Motion to Dismiss (ECF 18) ("Opposition" or "Opp.") does not provide any persuasive argument that the First Amended Complaint states a cognizable claim.

For the reasons stated below, and those stated in Navy Federal's Supporting Memorandum of Defendant's Motion to Dismiss (ECF 14) ("Supporting Memorandum" or "Supp. Mem."), the First Amended Complaint should be dismissed with prejudice.

**A.**    **<u>Plaintiff Concedes That She Has Not Stated a Claim for Hostile Environment.</u>**

As noted in its Supporting Memorandum., Plaintiff's First Amended Complaint repeatedly references a "hostile work environment" (*e.g.,* FAC ¶¶ 30, 32, 33), but does not state sufficient facts to allege make out such a legal claim. Supp. Mem. at 8-12. Consequently, Navy Federal sought dismissal of the hostile environment claim. *See id.*

In her Opposition, Plaintiff makes no effort to oppose Navy Federal's argument and instead concedes that the First Amended Complaint is intended only to assert a single claim under

1

Section 1981 "based solely on the theory of disparate treatment based on her race (Black)." Opp. at 1. As such, it appears uncontested that Plaintiff has not stated a claim for Hostile Environment.

**B.      Plaintiff Has Not Stated a Claim for Disparate Treatment Discrimination.**

In the Supporting Memorandum, Navy Federal demonstrated that Plaintiff could not make out a claim for disparate treatment both because: (i) she was not subject to an adverse employment action; and (ii) because there were insufficient facts to establish discriminatory animus on Navy Federal's part. *See* Supp. Mem. at 5-8.

In her Opposition, Plaintiff primarily argues that her claim should survive because, "a plaintiff is not required to plead a prima facie case of discrimination." Opp. at 10; *see also id.* at 11, 12, 13, 14. Although that is a technically accurate statement of the law, it misses the point. As both parties agree, in order to survive a motion to dismiss, Plaintiff must plead sufficient facts to render her claim <u>plausible</u>. *See* Supp. Mem. at 4; Opp. at 8-11.

By definition, in alleging a disparate treatment claim based on race, Plaintiff is contending she suffered an adverse employment action because of her race. Thus, to meet the plausibility requirement, at bare minimum Plaintiff must at least plausibly allege: (i) an adverse employment action; and (ii) circumstances that suggest the adverse action was the result of discriminatory animus. When a complaint fails to plausibly allege either of the above elements, it is subject to dismissal. *See, e.g., Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) ("Jensen–Graf's complaint fails to state a plausible discrimination claim because she has not alleged any action that could reasonably be considered an adverse employment action."); *Anderson v. Sch. Bd. of Gloucester Cnty.*, 2020 WL 2832475, at *17 (E.D. Va. 2020) (dismissing claim because plaintiff "fails to identify any adverse employment action"); *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (affirming dismissal of discrimination claim because plaintiff "did not allege facts sufficient to claim that the reason it

failed to hire her was because of her race or sex."); *Harris v. Sec'y of Homeland Sec.*, 2023 WL 4850164, at *4 (E.D. Va. 2023) (Nachmanoff, J.) (dismissing claim because plaintiff did not sufficiently tie adverse action to her protected status).

In other words, to the extent Plaintiff is arguing that she is not required to plead sufficient factual allegations to establish an adverse employment action or discriminatory animus, she is mistaken. *See id.* Because, as explained below, she cannot make such a showing, her disparate treatment claim must be dismissed.

### 1. <u>Plaintiff Was Not Subject To Any Adverse Employment Action</u>.

As noted in the Supporting Memorandum, an adverse action is an "'ultimate employment' action that affects hiring, granting leave, discharging, promoting, and compensating." Supp. Mem. at 5 (quoting *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007)).[1] Because Plaintiff was not subject to any such employment action, her disparate treatment claim fails.

Although, in the First Amended Complaint, Plaintiff focuses on her receipt of a written "Memorandum of Warning" on September 28, 2018 (FAC ¶ 19),[2] and subsequent lowered

---

[1] In her Opposition, Plaintiff incorrectly asserts that an adverse action is any action that has a "significant detrimental effect" on an employee. *See* Opp. at 12 (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). *Boone*, however, does not stand for such a broad proposition. In that case, the plaintiff argued her reassignment to a different position was an adverse employment action: The 4th Circuit rejected the contention, holding that "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on her." 178 F.3d at 255. The court further held: "Although Boone may have experienced increased stress in the new job (according to her deposition testimony, this was due chiefly to its unfamiliarity and its more stringent deadlines), she did not allege discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion – the typical requirements for a showing of an 'adverse employment action' that can support a Title VII claim." *Id.* In the case at bar, there is no reassignment alleged (much less one that had a detrimental impact on Plaintiff), and *Boone* provides no salvation for her flawed claims.

[2] In the Amended Complaint, Plaintiff attempts to describe this document as a "Reprimand" (FAC ¶ 19)("*NFCU's management issued Plaintiff a formal, written Memorandum of Warning*

3

evaluation rating in *one* category of her performance appraisal (FAC ¶ 20), such a document is not

an adverse employment action in its own right.  *See* Supp. Mem. at 5-6 (citing, *e.g., Thompson v.*

*Potomac Electric Power Co*., 312 F.3d 645, 651-652 (4th Cir. 2002); *Salmoiraghi v. Veritiss, LLC*,

2022 WL 1036769, at *8 (E.D. Va. 2022) (Nachmanoff, J.)).  Negative written documentation can

only become actionable if the documentation leads to an actual adverse employment action down

the line.  *See, id. (*citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004)).

Here, Plaintiff has not alleged that any such adverse action took place because it did not.[3]

In her Opposition, Plaintiff does not offer any substantive response to the above.  Instead,

Plaintiff seems to rely on the following quote from *Hinton v. Virginia Union Univ.*, 185 F.Supp.3d

807, 819 (E.D. Va. 2016):

> "[T]he Fourth Circuit and its district courts have hewed to the view that
> neither oral nor written reprimands constitute the sort of adverse
> employment action cognizable under Title VII unless plaintiff also alleges
> that the reprimand has potential collateral consequences that rise to the level
> of an adverse employment action."

Opp. at 12-13.  But the above quotation merely restates the principle from *James* that a written

reprimand can be actionable *only* if it leads to an adverse employment action.  In the end, Plaintiff

would still need to point to an actual adverse action in order to state a claim, and she has not done

so here.  Rather, after quoting *Hinton*, Plaintiff's Opposition merely asserts:

---

*(hereinafter "Reprimand")*")"), most likely in an attempt to align her claims with the language of
the *Hinton* case, discussed *infra*.  However, Navy Federal shall continue to refer to the document
as "Memorandum of Warning" (or "MOW" as it is known within Navy Federal), because a
"Reprimand" in Navy Federal parlance reflects a more severe form of discipline.

[3] Plaintiff concedes that her overall rating in her 2018 annual performance appraisal was
"Successfully Meets Expec.", consistent with the overall ratings she had received in past years.
Am. Compl. at ¶ 21.  Moreover, although Plaintiff asserts generally and vaguely that she
"resigned" as a result of the "hostile work environment" (FAC ¶ 29), she does not allege a claim
for constructive discharge, and even if the Amended Complaint were deemed to assert such a
claim, such a claim would be fatally flawed for the reasons set forth in Navy Federal's brief in
support of its Motion to Dismiss the original Complaint.  *See* ECF 8 at 8-10.

> The collateral consequences of Plaintiff's receipt of Defendant's Reprimand include restriction of Plaintiff's interaction with vendors, a vital task for Plaintiff's performance and development, in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects, and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions.

Opp. at 13 (citing FAC ¶¶ 23, 24, 25, 26, 33).

As a starting point. this paragraph blatantly misstates Plaintiff's own factual allegations.[4] The written MOW was issued on September 28, 2018 and *included* a restriction on Plaintiff's communications with vendors because of Plaintiff's decision to send an email at 3:00 a.m. earlier that month. *See* FAC ¶ 23. This restriction was temporary and, as acknowledged in the Amended Complaint, was shortly thereafter "backtracked" by Navy Federal. *See id.* ¶ 25. While it is true that Plaintiff alleges she was denied the ability to work from home on a single occasion, that event happened in January 2018, <u>eight months before</u> the issuance of the MOW, and outside the statute of limitations period. *See id.* ¶ 26. Likewise, the project meetings from which Plaintiff allegedly was excluded occurred in February 2018, <u>seven months before</u> the MOW (and outside the limitations period). *See id.* ¶ 28. Obviously, neither the "work from home" issue nor the project meeting exclusions could be a "consequence" of a Memorandum of Warning that had not yet been written or issued.

More to the point, none of the "consequences" claimed in the Opposition are adverse employment actions. *See, e.g., Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596,

---

[4] Regrettably, as in each of her prior complaints, Plaintiff's First Amended Complaint adopts the unfortunate approach style of describing events in non-chronological order, jumping back-and-forth in time, so that it may seem unclear which event follows the other. *See, e.g.*, FAC ¶ 19 (Sept. 28, 2018 reprimand); ¶ 21 (December 2018 performance evaluation); ¶ 22 (Sept. 12, 2018 email); ¶ 23 (Sept. 28, 2018 reprimand); ¶ 26 (January 30, 2018 request to work from home); ¶ 28 (February 28, 2018 email); ¶ 29 (Sept 28, 2018 email).

598 (4th Cir. 2015); *Anderson v. Sch. Bd. of Gloucester Cnty.,* 2020 WL 2832475, at \*17 (E.D. Va. 2020). That, in turn, means the MOW itself is not actionable. *See id.*

Plaintiff's inability to point to any adverse employment action is fatal to her claim. *See id.* As such, her sole claim in this case for disparate treatment must be dismissed.

### 2.      Plaintiff Cannot Establish Discriminatory Animus.

Even if Plaintiff could somehow point to an adverse action, her claim would still fail because it does not plausibly allege Navy Federal took its actions *because of* her race. In *McCleary-Evans*, the Fourth Circuit made clear that a plaintiff must allege sufficient facts that would plausibly suggest a discriminatory state of mind on the defendant's part, which could not be explained away by an "obvious alternative explanation." 780 F.3d at 588. Further, a plaintiff cannot rely on "mere speculation" of racial motivation to state claim. *Harris,* 2023 WL 4850164 at \*4. A strong pleading standard is required to avoid a situation where "any qualified member of a protected class who alleges nothing more than that she was denied a position or promotion in favor of someone outside her protected class would be able to survive a Rule 12(b)(6) motion." *McCleary-Evans*, 780 F.3d at 588.

In her Opposition, Plaintiff's primary assertion of discriminatory animus is that, after she had an animated confrontation with a white co-worker, Ms. Hirsch, Navy Federal issued Plaintiff a reprimand but not Ms. Hirsch. However, the mere fact that Plaintiff assumes that Ms. Hirsch did not receive any counseling after their interaction does not make it "plausible" that Navy Federal was *motivated* by the workers' race. To make such a leap is unacceptable speculation.

In her Opposition, Plaintiff tries to buttress her speculation by framing the dispute as Ms. Hirsch engaging in a "racist confrontation with Plaintiff." Opp. at 13. Such a depiction is not warranted by the actual allegations in the First Amended Complaint. As best as can be discerned,

the allegation of racism seems entirely based on Ms. Hirsch (a co-worker) stating to Plaintiff, "don't roll your neck at me." FAC ¶ 3. A request by a co-worker that one not use disrespectful body language is not an inherently "racist comment" and does not indicate racial animus. More importantly, one certainly cannot draw any inference of racial animus on the part of Navy Federal from this interaction. *See, e.g., Harris*, 2023 WL 4850164 at *4 (comment that plaintiff was told to "control her emotions" did not reveal discriminatory animus).

Plaintiff's Opposition also argues discriminatory motivation based on the fact that she was temporarily restricted in her communications with vendors while two white employees (Stice and Roa) were not. *See* Opp. at 14. Stice and Roa, however, are clearly not similarly situated employees. Plaintiff explains precisely why she was given the vendor restriction – because she inappropriately sent an email out at 3:00 a.m. and did not follow internal protocols. *See* FAC ¶¶ 21, 23. Stice and Roa did not engage in that conduct, so they were not subject to the same restriction. Plaintiff's argument that the different treatment of these white employees was motivated by race, rather than her own conduct, is nothing more than "mere speculation" unsupported by the applicable (and conceded) facts.

Because Plaintiff has not plausibly pled that she suffered any actionable adverse employment action, or that Navy Federal was motivated by racial animus, Plaintiff's disparate treatment claim must be dismissed.

**C.    Plaintiff's Complaint Should Be Dismissed With Prejudice.**

In its Supporting Memorandum, Navy Federal demonstrated that Plaintiff should not be entitled to any further leave to amend her complaint because she has had numerous opportunities to plead a claim. *See* Supp. Mem. at 12-13 (citing *Field v GMAC LLC*, 660 F. Supp. 2d 679, 690 (E.D. Va. 2008)). Plaintiff does not state present any argument to the contrary. As such, arguably

# JA84

Plaintiff has conceded that any dismissal in this matter should be made with prejudice and without leave to amend.

## CONCLUSION

For the reasons stated above and in the Supporting Memorandum, Plaintiff's sole remaining claim for disparate treatment is fatally flawed in multiple ways. Consequently, Navy Federal respectfully requests that the First Amended Complaint be dismissed with prejudice.

Dated: August 14, 2023                        Respectfully submitted,

      /s/ Edward Lee Isler
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road. Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Defendant*
*Navy Federal Credit Union*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 14th day of August, 2023, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which shall send notification to the following:

Thomas F. Hennessy, Esq.
The Hennessy Law Firm, P.L.L.C.
4015 Chain Bridge Road Suite G
Fairfax, Virginia 22030
thennessy@virginiawage.net

<u>/s/ Edward Lee Isler</u>
Edward Lee Isler
Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
eisler@islerdare.com

9

# JA86

**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| **CHRISTEL JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: 1:23-cv-00794** |
| **NAVY FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>NOTICE OF FILING HEARING TRANSCRIPT</u>**

COMES NOW the Plaintiff, CHRISTEL JOHNSON, and respectfully submits the

attached hearing transcript.

Dated: January 18, 2024

_____/s/_____
Thomas F. Hennessy, Esq. (VSB: 32850)
The Hennessy Law Firm, PLLC
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
(703) 865-8836 Telephone
(703) 865-7633 Facsimile
thennessy@virginiawage.net
Counsel for Plaintiff, Christel Johnson

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2024, I electronically filed the foregoing pleading
with the Clerk of Court using the CM/ECF system, which will then send a notification of such
filing (NEF) to all counsel of record.

Respectfully submitted,

Christel Johnson
By Counsel

1

_____/s/_____
Thomas F. Hennessy, Esq. (VSB: 32850)
THE HENNESSY LAW FIRM, PLLC
4015 Chain Bridge Road, Suite G Fairfax, Virginia 22030
(703) 865-8836 Telephone (703) 865-7633
Facsimile thennessy@virginiawage.net
Counsel for Plaintiff

```
 1                      UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF VIRGINIA
 2                           ALEXANDRIA DIVISION


 3
         CHRISTEL JOHNSON,                :
 4                                        :
                         Plaintiff,       :   Civil Action
 5                                        :   No. 1:23-cv-794-MSN-JFA
                    v.                    :
 6                                        :
         NAVY FEDERAL CREDIT UNION,       :   September 1, 2023
 7                                        :   9:51 a.m.
                                          :
 8                       Defendant.       :
                                          :
 9       ........................... :


10


11                   TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE MICHAEL S. NACHMANOFF,
12                    UNITED STATES DISTRICT JUDGE

13       APPEARANCES:

14        For the Plaintiff:        HENNESSY LAW FIRM PLLC
                                    Thomas Francis Hennessy, Esquire
15                                  4015 Chain Bridge Road
                                    Suite G
16                                  Fairfax, VA 22030

17        For the Defendant:        ISLER DARE PC
                                    Edward Lee Isler, Esquire
18                                  1945 Old Gallows Road
                                    Suite 650
19                                  Vienna, VA 22182

20        Also Present:            Kayla Robinson, Esquire

21        Court Reporter:          Diane Salters, B.S., CSR, RPR, RCR
                                    Official Court Reporter
22                                  United States District Court
                                    401 Courthouse Square
23                                  Alexandria, VA 22314
                                    Email: Dianesalters.edva@gmail.com
24                                  Telephone: (301) 338-8033

25       Proceedings reported by machine shorthand.  Transcript produced
         by computer-aided transcription.
```

2

*Proceedings*

| | |
|---|---|
| 1 | THE COURTROOM DEPUTY:  *Johnson v. Navy Federal Credit* |
| 2 | *Union*, Case Number 23-cv-794.  Will the parties please note their |
| 3 | appearances for the record? |
| 4 | MR. ISLER:  Edward Lee Isler with Navy Federal Credit |
| 5 | Union, the defendant; and with me is Kayla Robinson, in-house |
| 6 | counsel for Navy Federal Credit Union. |
| 7 | THE COURT:  Good morning. |
| 8 | MR. HENNESSY:  Yes, Your Honor.  Tom Hennessy |
| 9 | representing the plaintiff, Christel Johnson. |
| 10 | THE COURT:  Good morning. |
| 11 | This matter comes before the Court on Defendant's |
| 12 | motion to dismiss, and the matter has been fully briefed, and |
| 13 | I've had an opportunity to review the docket and the pleadings. |
| 14 | I'll hear any argument you have, Mr. Isler.  I don't need to hear |
| 15 | everything that's already been put in the pleadings, but anything |
| 16 | you want to highlight or emphasize, I'm happy to hear at this |
| 17 | time. |
| 18 | MR. ISLER:  Thank you, Your Honor.  I completely |
| 19 | understood.  I've tried to script out my comments to be |
| 20 | relatively brief.  As I mentioned, I'm Edward Lee Isler |
| 21 | from Isler Dare in Tysons Corner, Virginia, and representing |
| 22 | Defendant, Navy Federal Credit Union. |
| 23 | As you are aware and just mentioned, Your Honor, we're |
| 24 | here on Navy Federal's motion to dismiss under 12(b)(6), and I am |
| 25 | confident that you and your clerks have read the briefs, so I'm |

*Proceedings*

1    going to try to be relatively brief.

2          Christel Johnson was an employee at Navy Federal Credit

3    Union for a number of years until she resigned in 2019.  More

4    than a year prior to her resignation, she encountered some

5    difficult interactions with a coworker, as a result of which she

6    was given a disciplinary warning, known as a memorandum of

7    warning.  And this case has a very interesting procedural

8    history -- which I'm not going to go into it; it's all laid out

9    very thoroughly in our papers -- but the operative complaint

10   before the Court today is the plaintiff's first amended

11   complaint, which is ECF Docket Number 11, and that complaint

12   asserts one count under 42 U.S.C. § 1981, disparate treatment

13   based on the plaintiff's race.  And although some of the phrases

14   used in the amended complaint suggested that she was possibly

15   asserting a claim for racially hostile work environment or

16   constructive discharge, in her opposition brief, she confirms

17   that she's not pursuing those claims.  So to the extent that the

18   Court or my esteemed opposing counsel, Mr. Hennessy, believe

19   otherwise, I'd certainly be glad to address those claims

20   directly, but we're really here on a single claim of disparate

21   treatment under Section 1981.  And as the Court is well aware, in

22   order to advance a claim of discriminatory disparate treatment, a

23   plaintiff must allege facts that establish, among other things,

24   that she was subjected to an adverse employment action, and that

25   such adverse action occurred under circumstances giving rise to

*Proceedings*

1    an inference of discrimination.

2          In this case, there is nothing even remotely close to

3    an adverse employment action.  In an attempt to make out an

4    adverse action, she cites to various unpleasantries and

5    difficulties that she contends she experienced in the workplace,

6    and including some difficult interactions with a coworker,

7    Michelle Hirsch.  But as the Fourth Circuit has repeatedly held,

8    and as Your Honor held last year in the case of *Salmoiraghi v.*

9    *Veritiss* -- and that decision is found at 2022 WL 1036769 --

10   those kinds of interactions do not constitute an adverse

11   employment action for purposes of a disparate treatment claim.

12   For example, in that *Salmoiraghi* case, Your Honor held that such

13   allegations as stripping the plaintiff of certain advisory

14   duties, not permitting the plaintiff to transfer job sites, and

15   counseling the plaintiff in response to what he perceived as

16   false allegations that had been leveled against him were simply

17   not adverse actions needed to put forth a claim of discriminatory

18   disparate treatment.  Here, Plaintiff's claim of adverse

19   employment action appears to rest primarily upon Navy Federal's

20   issuance to her of a memorandum of warning -- or what Navy

21   Federal calls an MOW -- arising, in part, from her interactions

22   with Ms. Hirsch.  And she cites another Eastern District case,

23   the *Hinton* case, to argue that this type of counseling memorandum

24   can be considered an adverse employment action if it could

25   possibly lead to other discipline; however, as we noted in

*Proceedings*

1   footnote 2 of our opening brief, her citation to *Hinton* is really

2   misplaced, because even in that case, the court squarely rejected

3   the argument that a disciplinary warning could be viewed as an

4   adverse employment action based on the mere possibility that the

5   warning could lead to more significant consequences down the

6   road.  Indeed, I would suggest that the Fourth Circuit case law

7   could not be more clear, that this type of counseling memorandum

8   does not constitute an adverse employment action sufficient to

9   support her discriminatory treatment claim.

10          In the *Jensen-Graf* case, which we cite at the bottom of

11   page 5 of our opening brief and at the bottom of page 5 of our

12   reply brief, just coincidentally, the Fourth Circuit considered

13   the plaintiff's claim that being placed on a performance

14   improvement plan -- what employers typically call a PIP -- was in

15   and of itself an adverse employment action, and the Fourth

16   Circuit squarely rejected that argument, finding the complaint

17   failed to state a plausible claim where the plaintiff, quote,

18   failed to allege she received lower pay, was demoted, was passed

19   over for promotion, failed to receive a bonus, or was given

20   significant different responsibilities because she was placed on

21   the PIP.  Here, the disciplinary warning received by the

22   plaintiff in the form of the MOW was far less severe than the

23   type of performance improvement plan that the court considered in

24   the *Jensen-Graf* case.

25          Your Honor, it's also worth noting that the MOW

*Proceedings*

```
1    referenced in this case was issued in September 2018, so almost
2    five years ago.  Had the MOW led to more severe consequences,
3    those consequences could be viewed as rising to the level of an
4    adverse action.  Surely, it would have occurred by now, and,
5    surely, the plaintiff would have been able to cite such
6    consequences in her amended complaint.  The fact is there were no
7    further consequences for Plaintiff up until the point that she
8    voluntarily resigned her employment in December of 2019 to accept
9    a position with another employer, making more money.

10            In an effort to conjure up some consequences of the
11   issuance of the MOW, Plaintiff cites to such unpleasantries as
12   not being allowed to work from home or not being invited to a
13   meeting; however, as we outlined on page 5 of the reply brief,
14   these events occurred months before the MOW was ever issued and,
15   therefore, could not be viewed as consequences of the MOW being
16   issued.  And, of course, they're also not the type of allegations
17   that rise to the level of an adverse employment action under
18   well-established Fourth Circuit precedent.

19            The bottom line here is that Plaintiff's disparate
20   treatment claim never gets out of the starting box because she's
21   unable to identify an essential element of her claim, namely,
22   that she suffered an adverse employment action.  Moreover, even
23   if any of these events taken singly, taken collectively could be
24   viewed as an adverse employment action -- they cannot and they
25   cannot -- such action did not occur under circumstances giving
```

*Proceedings*

1    rise to an inference of discrimination.

2         This complaint is almost completely devoid of any

3    factual allegations that would suggest the presence of a

4    discriminatory work environment.  She cites only to one difficult

5    interaction with a coworker who accused the plaintiff of, quote,

6    rolling her neck, as evidence of racial discrimination.  That's

7    it.  There is nothing beyond that to suggest any racial animus;

8    and even that episode standing alone is a far cry from any

9    evidence of racial bias on the part of the employer.

10        In my humble view, Your Honor, this is not a close

11   call.  The Fourth Circuit has made clear the type of factual

12   allegations that must be alleged in order to survive a motion to

13   dismiss in a disparate treatment discrimination case; and those

14   types of allegations, including that the plaintiff suffered an

15   adverse employment action, are completely absent here.  And for

16   these reasons and for those stated in our briefs, we respectfully

17   request that the Court grant the motion to dismiss.

18        Finally, Your Honor, we also respectfully request that

19   the Court not give the plaintiff leave to amend.  As outlined on

20   pages 12 and 13 of our opening brief, there is a limit in the

21   Eastern District to the number of bites a plaintiff may take at

22   the apple.  Here, Plaintiff is essentially on her third bite,

23   having filed an initial complaint in 2020, another complaint in

24   2022, and then an amended complaint in this case; and Navy

25   Federal should not be compelled to endure Plaintiff's fourth bite

*Proceedings*

1   at the apple, especially when it's abundantly clear there's

2   really nothing more here to be pled.  And I say this with great

3   confidence, Your Honor, because unlike almost any 12(b)(6) motion

4   I've ever argued, in this case, I've already taken the

5   plaintiff's deposition during a prior iteration of the case.  And

6   I mention this not because I'm seeking to cite the deposition or

7   to turn this into a Rule 56 proceeding, but really to underscore

8   that I'm quite confident that there really is nothing else to be

9   added.  Now, if her counsel, Mr. Hennessy, is aware of such

10  facts, maybe he can make a proffer to the Court, but I suspect

11  Mr. Hennessy, who sat through the deposition in March of 2022, is

12  well aware that there's nothing further that can be added.  So

13  for this reason, I ask the Court not only to grant our motion to

14  dismiss, but also to grant it with prejudice.

15          Thank you, Your Honor.

16          THE COURT:  Thank you, Mr. Isler.

17          Mr. Hennessy?

18          MR. HENNESSY:  Yes.  Good morning, Your Honor.

19          THE COURT:  Good morning.

20          MR. HENNESSY:  Yes.  The complaint in this case, as

21  established in the response brief, need only allege facts

22  sufficient to show that the plaintiff has a claim that rises

23  above the mere speculative level; and I think that it's clear

24  from the briefing in this case and the citations to authorities

25  that the Fourth Circuit has recognized that the plaintiff need

9

*Proceedings*

1  not plead a *prima facie* case.  Also, the cases make clear that

2  when viewing a complaint on a 12(b)(6) motion to dismiss, the

3  Court should consider the totality of the circumstances; and in

4  this case, there were actual and potential consequences flowing

5  from the reprimand that Ms. Christel Johnson received.  Also

6  that -- and this is particularly noteworthy at this stage, at the

7  pleading stage -- Ms. Johnson has identified -- and this is

8  before discovery was taken because she was not permitted to take

9  discovery in the prior action that I wasn't involved in except to

10 defend her deposition -- that's really outside the scope of what

11 we're doing here today, but it was mentioned by Mr. Isler, so I

12 would indicate that, and I don't think he disagrees -- at least

13 since I was involved in the case, I was unable to take discovery

14 because of deadline issues, which is why we're here today.  And

15 Ms. Johnson, as I understand it, essentially when she was *pro se*,

16 didn't take discovery.  She had been represented by prior counsel

17 who withdrew, and no discovery had been taken by her at that

18 point; discovery was taken by the defendant.

19     But Ms. Johnson has identified in her complaint

20 specifically similarly situated employees who were treated more

21 favorably than her; and I think when viewed together with the

22 disciplinary notice, which itself was an instance of Ms. Johnson

23 being treated less favorably than, in this case, Ms. Hirsch, who

24 was an employee outside the protected class, and the allegations

25 of the complaint was that the altercation that led to the written

*Proceedings*

 1  reprimand being issued by Navy Federal to Ms. Johnson was an

 2  altercation initiated by Ms. Hirsch.  Ms. Johnson, for the

 3  reasons stated in her complaint, does not believe that Ms. Hirsch

 4  was ever disciplined because, in fact, she was subsequently

 5  promoted, she was disciplined, and there were significant

 6  restrictions that were imposed upon her in the disciplinary

 7  notice that she received with regard to contact with vendors that

 8  had a downstream effect on Ms. Johnson.  Also, the consequences

 9  or potential consequences -- potential consequences, I would

10  say -- of the disciplinary notice, or reprimand, according to

11  NSU's own policies, could include a disqualification of

12  Ms. Johnson from receipt of a bonus, and could also include,

13  according to the terms of the reprimand as alleged in the

14  complaint, her ultimate termination.  So there were significant

15  downstream potential effects.  The reprimand itself represented

16  disparate treatment in that Ms. Hirsch, outside the protected

17  class, initiated the conflict with Ms. Johnson.  She, as far as

18  we know and as far as subsequent events indicate, Ms. Hirsch was

19  never disciplined; Ms. Johnson was disciplined.  And there is

20  also some disparate treatment that is alleged with regard to two

21  specifically identified employees outside the protected class --

22  Aaron Stice, if I'm pronouncing his name correctly, and Wilson

23  Roa -- and that would be with regard to their entitlement to

24  contact vendors, which was withdrawn from Ms. Johnson.

25          Ms. Johnson also alleges in the complaint that she was

- Proceedings -

1    excluded from meetings.  And she also alleges, as a consequence

2    of the reprimand that she received, that she was given

3    contradictory instructions for which she was subject to

4    discipline.  Other specific instances of disparate treatment,

5    when taken together with the reprimand, satisfies the pleading

6    requirement for showing adverse action on the part of NSU.  And I

7    think at this stage where the standard is not pleading facts to

8    support a *prima facie* case, but, rather, pleading facts that

9    would show that the case rises above the mere speculative level

10   or the case does not consist merely of conclusory allegations and

11   labels, which is another description of a case that would be

12   subject to dismissal under 12(b)(6), this is not that case, and

13   it's not that case primarily because we have concrete discipline,

14   which, standing alone, may not be enough, but we have, in

15   combination with that and connected to that, we have disparate

16   treatment, disparate treatment with respect to Ms. Hirsch and the

17   incident that gave rise to the reprimand, disparate treatment

18   with respect to other employees and certain important rights that

19   they maintained.  They were outside the protected class, and

20   Ms. Johnson was not permitted, for example, to -- she was

21   excluded from certain meetings and not permitted to contact

22   vendors.  So taken together, I think, at this stage, Your Honor,

23   Ms. Johnson has stated a claim that she was subjected to adverse

24   action on the part of NSU.

25           Oh, and in conclusion, Your Honor, I would say

*Proceedings*

1   Ms. Johnson has specifically described the altercation and has

2   stated that Ms. Hirsch used a racial -- I would not say an

3   epithet -- but she used a racial description of Ms. Johnson's

4   behavior which, I think, on its face at this pleading stage

5   should be taken as a race-based statement or a statement giving

6   rise to an inference of discriminatory animus on the part of

7   Ms. Hirsch for which, again, as far as all of the evidence would

8   suggest and what happened subsequently to the altercation and the

9   reprimand, Ms. Hirsch was not disciplined.

10         Thank you, Your Honor.

11         THE COURT:  Thank you.  And to be clear,

12   Mr. Hennessy -- I think it is clear in your pleadings -- but you

13   are not a pursuing a hostile work environment claim; your prior

14   statement was simply in reference to the disparate treatment

15   claim that you are pursuing in a single count; is that correct?

16         MR. HENNESSY:  That is correct, Judge.

17         THE COURT:  Thank you.

18         Well, this matter comes before the Court on Defendant's

19   motion to dismiss under 12(b)(6), and I have had the opportunity

20   to review the pleadings and consider the arguments made.  Let me

21   say at the outset that the Court is not considering any of the

22   statements with regard to the deposition of Ms. Johnson.  I know

23   they weren't intended for the Court to take them in that light.

24         There is a long procedural history to this case.

25   Again, the Court is looking at this under the standards of

13

*Proceedings*

```
 1   12(b)(6), and I accept the pleadings and the factual allegations
 2   made in the light most favorable to the plaintiff.  As noted in
 3   the pleadings and just now, Plaintiff is not seeking to pursue a
 4   hostile work environment claim, and that is clear in the record.
 5   And so this really is looking at these claims and determining
 6   whether or not the elements have been made sufficiently to pass
 7   the plausibility standard for a disparate treatment claim.  And I
 8   do find that the motion must be granted.  There's simply no way
 9   to view, even taking the facts in the light most favorable to the
10   plaintiff, the memorandum of warning and the other allegations in
11   the complaint as meeting the low standard of an adverse action
12   based on Fourth Circuit case law.  While I fully understand and
13   appreciate that there was a difficulty in the relationship
14   between the plaintiff and others at Navy Federal Credit Union,
15   the memorandum of warning and a written reprimand, it simply
16   doesn't rise to the level of being adequate to meet the adverse
17   employment action standard.
18           And I further find that with regard to the fourth
19   factor, which is whether or not the adverse action, assuming
20   there was one, occurred in circumstances giving rise to an
21   inference of unlawful discrimination, I find that that has not
22   been adequately pled either.  And while I understand the
23   perception that that comment had a racial tinge to it and that
24   the treatment of others as compared to Ms. Johnson raised that
25   inference, I don't think that that can be gleaned beyond a
```

*Proceedings*

1    speculative level, which does not meet the basic pleading

2    standards.

3          I also find that dismissal must be with prejudice given

4    the history of this case and the nature of the allegations here.

5    And so I will grant the motion and dismiss the claim with

6    prejudice.

7          Ms. Johnson, I'm glad to hear, if it is true, that you

8    were able to find another job that I hope provides you with

9    better pay and more satisfaction.  I appreciate that there can be

10   difficulties in employment relationships, and sometimes the

11   courts are the best avenue for resolving those matters, and

12   sometimes they cannot be.  So I simply say that to thank counsel

13   for your efforts.  The Court has ruled.

14          (Whereupon, the proceedings concluded at 10:20 a.m.)

15

16                *      *      *      *      *

17

18                CERTIFICATE OF REPORTER

19          I, Diane Salters, hereby certify that the foregoing

20   transcript is a true and accurate record of the stenographic

21   proceedings in this matter.

22                              /s/ Diane Salters

23                              _____

24                              Diane Salters, CSR, RCR, RPR
                                Official Court Reporter

25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHRISTEL JOHNSON,
　　　　　*Plaintiff*,

v.                                              No. 1:23-cv-00794 (MSN/JFA)

NAVY FEDERAL CREDIT UNION,
　　　　　*Defendant*.

### ORDER

This matter comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 13). Having reviewed the motion, opposition, reply thereto, arguments of counsel, and for the reasons stated in open court, it is hereby

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 13) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. 11) is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that judgment be entered in favor of Defendant.

It is **SO ORDERED**.

The Clerk is directed to enter judgment in favor of Defendant Navy Federal Credit Union pursuant to Fed. R. Civ. P. 58, and to close this civil action.

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　Michael S. Nachmanoff
　　　　　　　　　　　　　　　　　United States District Judge
　　　　　　　　　　　　　　　　Hon. Michael S. Nachmanoff
　　　　　　　　　　　　　　　　United States District Judge

Alexandria, Virginia
September 6, 2023

# JA103

**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| **CHRISTEL JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: 1:23-cv-00794** |
| **NAVY FEDERAL CREDIT UNION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>NOTICE OF APPEAL</u>**

Notice is hereby given that the Plaintiff, CHRISTEL JOHNSON, hereby appeals to the

United States Court of Appeals for the Fourth Circuit from the Order entered in this action on the

6th of September 2023.

Dated: October 6, 2023

_____/s/_____
Thomas F. Hennessy, Esq. (VSB: 32850)
The Hennessy Law Firm, PLLC
4015 Chain Bridge Road, Suite G
Fairfax, Virginia 22030
(703) 865-8836 Telephone
(703) 865-7633 Facsimile
thennessy@virginiawage.net
Counsel for Plaintiff, Christel Johnson

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2023, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Respectfully submitted,

Christel Johnson
By Counsel
_____/s/_____
Thomas F. Hennessy, Esq. (VSB: 32850)
THE HENNESSY LAW FIRM, PLLC
4015 Chain Bridge Road, Suite G Fairfax, Virginia 22030
(703) 865-8836 Telephone (703) 865-7633
Facsimile thennessy@virginiawage.net
Counsel for Plaintiff

2