Case No. 23-2057

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

_____

CHRISTEL JOHNSON,

*Appellant,*

v.

NAVY FEDERAL CREDIT UNION,

*Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

_____

## RESPONSE BRIEF OF APPELLEE

_____

Edward Lee Isler (VSB 27985)
Micah E. Ticatch (VSB 83351)
ISLER DARE, P.C.
1945 Old Gallows Road
Suite 650
Vienna, Virginia 22182
Telephone: (703) 748-2690
Facsimile:  (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com
*Counsel for Appellee Navy Federal Credit Union*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _23-2057_       Caption: _Christel Johnson v. Navy Federal Credit Union_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Navy Federal Credit Union_
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Edward L. Isler                         Date:        2/23/2024

Counsel for: Navy Federal Credit Union

Print to PDF for Filing

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES ..........................................................ii

STATEMENT OF THE CASE ................................................... 1

SUMMARY OF ARGUMENT ................................................... 7

ARGUMENT ............................................................................. 8

The Trial Court Correctly Dismissed Plaintiff's Section
1981 Claim for Failure to State a Claim............................................. 8

    A.    Plaintiff failed to plead she was subject to an adverse
    employment action. ................................................. 9

    B.    Plaintiff failed to plausibly plead discriminatory animus
    on the part of Navy Federal. ................................. 13

    C.    The Trial Court Properly Dismissed Plaintiff's Claims
    with Prejudice. ..................................................... 16

CONCLUSION ...................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   140 S. Ct. 1009 (2020) ............................................................... 7, 13, 15

*Harris v. Sec'y of Homeland Sec.*,
   2023 WL 4850164 (E.D. Va. 2023) ...................................................... 14

*Hoyle v. Freightliner, LLC*,
   650 F.3d 321 (4th Cir. 2011) ................................................................ 10

*James v. Booz-Allen & Hamilton, Inc.*,
   368 F.3d 371 (4th Cir. 2004) ................................................................ 11

*Jensen-Graf v. Chesapeake Employers' Ins. Co.*,
   616 F. App'x 596 (4th Cir. 2015) ................................................... passim

*Jones v. Constellation Energy Projects & Servs. Grp., Inc.*,
   629 F. App'x 466 (4th Cir. 2015) .......................................................... 10

*Jones v. R.R. Donnelley & Sons Co.*,
   541 U.S. 369 (2004) ................................................................................ 1

*McCleary-Evans v. Maryland Dep't of Transp.*,
   780 F.3d 582 (4th Cir. 2015) ............................................................ 8, 13

*McKenzie-El v. Am. Sugar Ref., Inc.*,
   2021 WL 5412341 (4th Cir. 2021) (per curiam .................................. 14

*Melendez v. Bd. of Educ. for Montgomery Cnty.*,
   711 F. App'x 685 (4th Cir. 2017) .......................................................... 10

*Swaso v. Onslow Cnty. Bd. of Educ.*,
   698 F. App'x 745 (4th Cir. 2017) .......................................................... 10

*Tabb v. Bd. of Educ. of Durham Pub. Sch.,*
 29 F.4th 148 (4th Cir. 2022) ...................................................9

*Thompson v. Potomac Electric Power Co.,*
 312 F.3d 645 (4th Cir. 2002) .............................................. 10

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.,*
 42 F.4th 185 (4th Cir. 2022) .............................................. 16

## <u>STATEMENT OF THE CASE</u>

***Statement of Facts.***[1]

Appellant Christel Johnson ("Plaintiff")[2] was an African American former Software Quality Assurance Test Specialist for Appellee Navy Federal Credit Union ("Navy Federal"). (JA 33, ¶ 5.) Because Plaintiff's original Complaint in this matter was filed on June 6, 2022, and considering the applicable statute of limitations period, the relevant facts are those that occurred on or after June 6, 2018.[3] *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 385 (2004).

---

[1] Because Plaintiff's claim was dismissed under Rule 12(b)(6), the relevant "facts" are those alleged allegations in the First Amended Complaint (JA 32 – 44). Notably Navy Federal disputes the accuracy of many of these allegations. Additionally, the Amended Complaint adopts the unfortunate style of describing events in non-chronological order, jumping back-and-forth in time. For clarity, this Statement attempts to lay out the relevant facts in appropriate time order.

[2] As Appellant was referred to as "Plaintiff" in the Opening Brief, Navy Federal has continued the use this reference in the brief to avoid any confusion.

[3] Plaintiff has never contested that the 4-year limitations period applies to her case. Nonetheless, her Statement of the Case goes into considerable detail regarding allegations that allegedly happened prior to start of the relevant time period. (*See* Dkt. 22, 6-7.) It remains somewhat unclear why she references these irrelevant factual allegations.

1

On June 6, 2018, Plaintiff engaged in an animated conversation with a co-worker, Michelle Hirsch, and a manager, Tim Solem. (JA 34, ¶ 10.) During this conversation, Ms. Hirsch allegedly stated to Plaintiff, "don't roll your neck at me." (JA 34, ¶ 10.) Plaintiff "felt that this was an offensive and racist comment." (JA 34, ¶ 10.) Because of the commotion caused by the conversation, another manager asked Plaintiff, Mr. Solem, and Ms. Hirsch to go into a conference room to finish their discussion. (JA 35, ¶ 11.) Plaintiff did not go into the conference room, and, presumably, ended the conversation instead. (*See* JA 35, ¶ 12.)

On September 12, 2018, Plaintiff sent an email to a co-worker Lorraine Hercules at 3:00 a.m. (JA 37, ¶ 22.)

On September 28, 2018, Plaintiff's supervisor, Carlo Hernandez, issued her a Memorandum of Warning ("MOW"),[4] which constituted a written warning for her conduct. (*See* JA 36, ¶ 19.) The MOW referenced

---

[4] In both the Amended Complaint and her Opening Brief, Plaintiff refers to the "Memorandum of Warning" as the "Reprimand." (JA 36, ¶ 19; Dkt. 22 at 10.) In reality, Navy Federal's disciplinary system includes a form of discipline that is more severe than the MOW, called a "reprimand." To avoid any confusion, Navy Federal will refer to the document Plaintiff received by its actual title "Memorandum of Warning" or "MOW" rather than Plaintiff's inaccurate term.

both Plaintiff's conduct during her June 6 conversation with Ms. Hirsch and her 3:00 a.m. email to Ms. Hercules on September 12.  (*See* JA 36, ¶ 19; JA 38, ¶ 23.)

As part of the MOW, Plaintiff was briefly restricted from contacting vendors.  (JA 38, ¶¶ 23-24.)  However, this restriction was rescinded by Navy Federal in short order.  (*See* JA 38, ¶ 25.)  Plaintiff identifies two Caucasian co-workers, Aaron Stice and Wilson Roa, who Plaintiff claims were not subject to the same restriction on contacting vendors.  (JA 38, ¶ 23.)  However, the Complaint does not allege that either Mr. Stice or Mr. Roa had engaged in the conduct which led to this temporary restriction on Plaintiff.

Sometime in December 2018, Plaintiff received a performance evaluation.  (JA 37, ¶ 21.)  In the category of "Communicates Effectively," Plaintiff was given a rating of "Needs Improvement."  (JA 37, ¶ 20.)  The explanation of the low rating referenced Plaintiff's June 6 conversation with Ms. Hirsch and the issuance of the MOW.  Despite that low category rating, Plaintiff still received an overall rating of "Successfully Meets Expec[tations]."  (JA 37, ¶ 21.)

Plaintiff does not allege that prior to her voluntary resignation to take another job, the MOW or her 2018 evaluation led to any termination, or that she ever suffered a loss of pay, demotion, loss of promotion, or that she was ever given significantly different responsibilities.

### Procedural History and Rulings Under Review.

On November 20, 2020, Plaintiff initiated a claim against Navy Federal alleging claims of racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). *See Johnson v. Navy Federal Credit Union*, No. 1:20-cv-01440 (E.D. Va.) ("*Johnson I*"). In *Johnson I*, immediately following the close of discovery, Plaintiff moved to voluntarily dismiss her case. (*See Johnson I*, Dkt. 40.) The district court granted Plaintiff's motion to dismiss without prejudice over Navy Federal's objection. (*Id.,* Dkt. 44.)

On June 6, 2022, Plaintiff refiled her Section 1981 claims in Fairfax County Circuit Court. (JA 5 – JA 15.) Following removal of the Complaint to the U.S. District Court for the Eastern District of Virginia, Navy Federal moved to dismiss the Complaint because it failed to state a claim. (JA 16 – JA 31.) Rather than respond to the initial Motion to

Dismiss, Plaintiff filed her First Amended Complaint ("Amended Complaint") by right under Rule 15(a)(1)(B).  (JA 32 – JA 44.)

The Amended Complaint purported to assert a single claim under Section 1981 for disparate treatment on the basis of Plaintiff's race.[5]  (*Id.*) However, the pleading failed to: (1) plead an adverse employment action by Navy Federal; or (2) plead sufficient facts to establish an inference of racial animus.  Consequently, on July 25, 2023, Navy Federal filed a second Motion to Dismiss under Rule 12(b)(6).  (JA 45.)  Because of the long history of the matter, Navy Federal asked that the case be dismissed with prejudice, and without leave to amend.

Following the briefing of the parties, on September 1, 2023, the Hon. Michael S. Nachmanoff held a hearing on Navy Federal's second Motion to Dismiss.  At the hearing, following the argument of the parties,

---

[5] From the face of her pleading, it appeared that Plaintiff was attempting to state an additional claim for racially hostile environment.  Likewise, Plaintiff's Statement of the Case continues to reference a "hostile work environment."  (*See, e.g.,* Dkt. 22 at 7.)  Plaintiff, however, has made absolutely clear in both her Trial Court briefing and at the Motion to Dismiss hearing that was not asserting a hostile environment claim.  (JA 62, JA 99.)

Judge Nachmanoff indicated he would grant the Motion to Dismiss and explained:

> There's simply no way to view, even taking the facts in the light most favorable to the plaintiff, the memorandum of warning and the other allegations in the complaint as meeting the low standard of an adverse action based on Fourth Circuit case law. . .
>
> And I further find that with regard to the fourth factor, which is whether or not the adverse action, assuming there was one, occurred in circumstances giving rise to an inference of unlawful discrimination, I find that that has not been adequately pled either. And while I understand the perception that that comment had a racial tinge to it and that the treatment of others as compared to Ms. Johnson raised that inference, I don't think that that can be gleaned beyond a speculative level, which does not meet the basic pleading standards.

(JA 100 – JA 101.)  Judge Nachmanoff further held that in light of the "long procedural history of this case" the dismissal should be with prejudice.  (JA 99, JA 101.)

Consistent with his oral ruling, on September 6, 2023, Judge Nachmanoff entered a final judgment in Navy Federal's favor, dismissing Plaintiff's claims with prejudice.  (JA 102.)

On October 6, 2023, Plaintiff filed her Notice of Appeal.[6]  (JA 103.)
In her Opening Brief, Plaintiff makes clear that her appeal is limited to
challenging the Trial Court's holding that: (1) she did not adequately
plead an adverse employment action; and (2) she did not adequately
plead an inference of racial discrimination.  (*See* Dkt. 22 at 1.)  Plaintiff
thus has not appealed the Trial Court's decision to dismiss *with prejudice*
(and the consequential denial of any further opportunity to amend).  (*See
id.*)

## SUMMARY OF ARGUMENT

In order to state an employment claim under Section 1981, a
plaintiff must, at minimum, allege sufficient facts to plausibly establish
both that: (1) she suffered an adverse employment action; and (2) that
but-for her race, she would not have experienced the adverse action.  *See,
e.g., Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596,
598 (4th Cir. 2015); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned
Media*, 140 S. Ct. 1009, 1019 (2020).

---

[6] Plaintiff actually filed her Notice of Appeal in the instant case and filed
a separate copy of that same document in *Johnson I*.  (*See Johnson v.
Navy Federal Credit Union,* No. 1:20-cv-01440 (E.D. Va.), Dkt. 45.)
Plaintiff's Counsel has confirmed that the latter filing was made in error.

7

The Trial Court correctly held that Plaintiff met neither requirement. In order to succeed on her appeal, Plaintiff would need to demonstrate that the Trial Court erred in *both* holdings. In fact, Plaintiff cannot show an error on *either* ground. Consequently, the dismissal of her Amended Complaint was proper, and the Trial Court's judgment should be affirmed.

## ARGUMENT

### The Trial Court Correctly Dismissed Plaintiff's Section 1981 Claim for Failure to State a Claim.

The Trial Court dismissed Plaintiff's sole claim for disparate treatment under Section 1981 on two separate alternative grounds: (1) Plaintiff failed to plausibly allege an adverse employment action; and (2) Plaintiff failed to plead sufficient allegations to raise an inference of discriminatory animus. (*See* JA 100.)

Either of the Trial Court's grounds for dismissal would have been sufficient, in their own right, to justify the dismissal of the Amended Complaint because each element is necessary for a plaintiff to plausibly state a claim under Section 1981. *See, e.g., Jensen-Graf*, 616 F. App'x at 598; *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

8

In her Opening Brief, Plaintiff repeats often that she was "not required to plead a prima facie case of discrimination." (Dkt. 22 at 13; *see also id.* at 14, 15, 16.) However, the Trial Court did not require her to plead a prima facie case, but only to meet the minimum threshold of plausibly pleading: (1) an adverse action that was taken (2) because of her race. (*See* JA 100.)

Because that was the correct standard on which to assess Plaintiff's claim, Plaintiff needs to demonstrate that the Trial Court erred in <u>both</u> of its holdings in order to succeed on her appeal. As discussed below, Plaintiff cannot make such a showing as to either issue — let alone both. Consequently, the Trial Court's dismissal of Plaintiff's Amended Complaint should be affirmed.

### A.   Plaintiff failed to plead she was subject to an adverse employment action.

As noted above, in order to state a claim for discrimination under Section 1981, Plaintiff was required to allege facts demonstrating she was subjected to an adverse employment action by Navy Federal. *See, e.g., Jensen-Graf*, 616 F. App'x at 598; *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, 29 F.4th 148, 156 (4th Cir. 2022).

"An adverse action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)).   Consequently, a complaint is properly dismissed when the plaintiff fails to "allege that she received lower pay, was demoted, was passed over for a promotion, failed to receive a bonus, or given significantly different responsibilities." *Jensen-Graf*, 616 F. App'x at 598.

Given that standard, it is not surprising that this Court has consistently held that a written counseling document does not constitute an adverse action.  *See, e.g., Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 651-652 (4th Cir. 2002); *Melendez v. Bd. of Educ. for Montgomery Cnty.*, 711 F. App'x 685, 688 (4th Cir. 2017); *Jensen-Graf*, 616 F. App'x at 598; *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015).  The only exception to that rule is "where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's

10

employment." *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004).  In other words, written counseling documents can only support a discrimination claim if they cause an actual adverse employment action down the line.

While the Amended Complaint alleges Plaintiff received a written Memorandum of Warning in September 2018, she fails to identify *any* adverse action that occurred because of this MOW.  While Plaintiff alleges that the MOW eventually led to a lower rating in one category of her 2018 performance evaluation, such a minor consequence does not constitute an adverse action.  Importantly, Plaintiff <u>does not</u> allege the MOW led to any: loss of pay, demotion, loss of a promotion, or being given significantly different responsibilities.  (*See* JA 37, ¶ 20.)  Consequently, the Trial Court correctly held that the MOW was not an adverse action and properly dismissed Plaintiff's claim.  (JA 100-101.)

Although Plaintiff appeals that holding, she fails to clearly articulate the basis for her appeal.  (*See* Dkt. 22 at 15-17.)  The entirety of her substantive argument on this point consists of a single sentence, in which she states:

> The collateral consequences of Plaintiff's receipt of Defendant's Reprimand include restriction of Plaintiff's

11

> interaction with vendors, a vital task for Plaintiff's performance and development, in addition to refusing Plaintiff's work-from-home requests, excluding Plaintiff from vital meetings and information relevant to Plaintiff's projects, and setting up Plaintiff for failure by giving Plaintiff contradictory instructions only to admonish Plaintiff later for following those instructions.

*Id.* at 17.

To begin with, this paragraph misstates Plaintiff's own factual allegations. The written Memorandum of Warning was issued on September 28, 2018 and included a restriction on Plaintiff's communications with vendors because of her decision to send an email at 3:00 a.m. earlier that month. (*See* JA 38, ¶ 23.) This restriction was temporary and, as acknowledged in the Amended Complaint, was shortly thereafter "backtracked" by Navy Federal. (*See id.*, ¶ 25.) While it is true that Plaintiff alleged she was denied the ability to work from home on a single occasion, that event happened in January 2018, eight months *before* the issuance of the Memorandum, and outside the statute of limitations period. (*See* JA 39, ¶ 26.) Likewise, the project meetings from which Plaintiff allegedly was excluded occurred in February 2018, seven months before the MOW (and also outside the limitations period). (*See* JA 39, ¶ 28.) As such, neither the "work from home" issue nor the project

12

meeting exclusions could be a "consequence" of a Memorandum of Warning that had not yet been written or issued.

More importantly, as discussed, none of these "consequences" claimed in the Opening Brief constitute adverse employment actions. *See, e.g., Jensen-Graf*, 616 F. at 598. Plaintiff offers no explanation on how the Court could find otherwise.

In sum, the Trial Court correctly found that Plaintiff did not suffer an adverse employment action. Consequently, the dismissal of her claim should be affirmed by this Court.

**B.    Plaintiff failed to plausibly plead discriminatory animus on the part of Navy Federal.**

In addition to establishing an adverse action, a plaintiff must also plead sufficient facts to plausibly suggest that the employer's action was the product of a discriminatory state of mind, and which could not be explained away by an "obvious alternative explanation." *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 588 (4th Cir. 2015). Additionally, claims made under Section 1981 are subject to a heightened pleading requirement to demonstrate that "but for race, [the plaintiff] would not have suffered the loss of a legally protected right." *Comcast*

*Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *see also McKenzie-El v. Am. Sugar Ref., Inc.*, 2021 WL 5412341, at *2 (4th Cir. 2021) (per curiam).

In her Opening Brief, Plaintiff's primary assertion of discriminatory animus is that after she had an animated confrontation with a white co-worker, Ms. Hirsch, Navy Federal issued Plaintiff a written counseling but did not issue one to Ms. Hirsch. (Dkt. 22 at 17-18.) However, the mere fact that Plaintiff assumes that Ms. Hirsch did not receive any counseling after their interaction does not make it "plausible" that Navy Federal was motivated by the workers' race. To make such a leap is unacceptable speculation.[7]

---

[7] In her brief, Plaintiff tries to buttress her speculation by framing the dispute as Ms. Hirsch engaging in a "racist confrontation with Plaintiff." (Dkt. 22 at 25.) Such a depiction is not warranted by the actual allegations in the Amended Complaint. As best as can be discerned, the allegation of racism seems entirely based on Ms. Hirsch (a co-worker) purportedly stating to Plaintiff, "don't roll your neck at me." (JA 34, ¶ 10.) A request by a co-worker that one not use disrespectful body language is not an inherently "racist comment" and does not indicate racial animus. *See, e.g., Harris v. Sec'y of Homeland Sec.* 2023 WL 4850164, at *4 (E.D. Va. 2023) (comment that plaintiff was told to "control her emotions" did not reveal discriminatory animus). More importantly, one certainly cannot draw any inference of racial animus on the part of Navy Federal from this interaction between two non-management employees.

14

Moreover, Plaintiff's own allegations demonstrate that she has failed to meet the Section 1981 pleading standard to show that the Memorandum of Warning would not have been issued "but for" her race. Indeed, Plaintiff's allegations suggest otherwise — that the MOW was issued because, among other reasons, Plaintiff sent an email at 3:00 a.m. to a subject matter expert (JA 38, ¶¶ 22-23). Again, other than pure speculation, Plaintiff has no basis for suggesting she would not have gotten that same Memorandum if she were another race. This is not sufficient to state a claim. *See Comcast Corp.*, 140 S. Ct. at 1019.

Plaintiff also argues she has demonstrated discriminatory motivation with the allegation that she was temporarily restricted in her communications with vendors while two white employees (Stice and Roa) were not. (Dkt. 22 at 18.) Stice and Roa, however, are clearly not similarly situated employees. Plaintiff's pleading explains precisely why she was given the vendor restriction – because she inappropriately sent an email out at 3:00 a.m. and did not follow internal protocols. (*See* JA 37-38, ¶¶ 21, 23.) There is no allegation that Stice and Roa engaged in that same conduct, so they were not subject to the same restriction. Plaintiff's argument that the different treatment of these white

15

employees was motivated by race, rather than her own conduct, is nothing more than "mere speculation" unsupported by the applicable (and conceded) facts.

Consequently, the Trial Court correctly held that Plaintiff had failed to adequately plead discriminatory animus. The Trial Court's dismissal should be affirmed on this ground as well.

## C.     The Trial Court Properly Dismissed Plaintiff's Claims with Prejudice.

At the Trial Court level, Plaintiff did not seek to further amend her pleading upon dismissal of the Amended Complaint. Likewise, Plaintiff has not sought review by this Court of the decision by the Trial Court to dismiss her claims with prejudice. (*See* Dkt. 22 at 1.) Consequently, Plaintiff has waived any review of that decision.

Furthermore, even if Plaintiff had preserved the issue and raised it in this appeal, the Trial Court's decision must be affirmed. The question of whether to dismiss with prejudice and deny further amendment is subject to an abuse of discretion review. *E.g., United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022).

16

Prior to filing the initial Complaint in this matter (JA 5 - 15), Plaintiff already had the opportunity of a full discovery period in *Johnson I*. Despite that background, the initial Complaint was facially deficient, causing Navy Federal to file its initial Motion to Dismiss. The Amended Complaint represented Plaintiff's best attempt to respond to that initial motion. The fact that, in her Amended Complaint, Plaintiff remained unable to state a claim is strongly indicative that no facts exist in which she could plausibly state a claim against Navy Federal for a violation of Section 1981.

Accordingly, the Trial Court was well-justified in dismissing the Amended Complaint with prejudice.

## <u>CONCLUSION</u>

In order to succeed on her appeal, Plaintiff needs to show the Trial Court erred (i) when it held that Plaintiff had not pled an adverse action; <u>and</u> (ii) when it held that Plaintiff had failed to plead sufficient facts to demonstrate a discriminatory animus. As explained above, Plaintiff cannot show error in either holding— let alone both. Consequently, the Trial Court's dismissal of her Amended Complaint must be affirmed.

Navy Federal respectfully requests oral argument.


Dated:  February 23, 2024            Respectfully submitted,

            /s/ Edward Lee Isler
_____
Edward Lee Isler
Micah E. Ticatch
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690 / (703) 748-2695 (Fax)
eisler@islerdare.com
mticatch@islerdare.com
*Counsel for Appellee Navy Federal
Credit Union*

## CERTIFICATE OF COMPLIANCE

This brief complies with the limitations of Fed. R. App. P. 32(a)(7)(A), because this brief is less than 30 pages in length.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word 365 word-processing system in 14-point Century Schoolbook font.

/s/   Edward Lee Isler
Edward Lee Isler

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of February, 2024, I electronically filed the foregoing Response Brief of Appellee Navy Federal Credit Union with the Clerk of this Court using the Court's CM/ECF system, which will send notice of such filing to registered ECF users.

/s/   Edward Lee Isler
Edward Lee Isler